**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **IN THE MATTER OF** | **CIVIL ACTION** |
| **ARIES MARINE** | |
| **CORPORATION, ET AL.** | **No. 19-10850** |
| | **c/w 19-13138** |
| | **REF: ALL CASES** |

**SECTION I**

**ORDER & REASONS**

Before the Court is a joint motion *in limine*[1] by Aries Marine Corporation

("Aries"), Fieldwood Energy, LLC ("Fieldwood"), and Fugro USA Marine ("Fugro") to

exclude the report and testimony of claimants' marine liability expert, Christopher

Bintcliffe ("Bintcliffe"). Claimants Calvin Abshire, Glenn Gibson, Tomas Arce Perez,

Lee Bob Rose, Gilberto Gomez Rozas, Gabriel Vilano, and Ronald Williams

(collectively, "claimants") oppose[2] the motion. For the reasons below, the Court denies

the motion.

## I.     FACTUAL BACKGROUND

This matter arises from a November 18, 2018 incident in which the RAM

XVIII, a liftboat[3] owned and operated by Aries, listed and ultimately capsized in the

Gulf of Mexico. After this incident, Aries filed a complaint for exoneration or

---

[1] R. Doc. No. 157.

[2] R. Doc. No. 193.

[3] A liftboat is a self-elevating vessel used in offshore mineral exploration and
production. E.g., R. Doc. No. 204, at 1. The RAM XVIII had three legs that were placed
on the sea floor, allowing the vessel to or lift, or "jack up," out of the water. *Id.*

limitation of liability in this Court.[4] The seven claimants, all of whom were present on the vessel during the incident, then filed answers and claims.[5] Claimants also filed a separate complaint[6] against Fugro and Fieldwood. That matter was consolidated with the limitation action.[7]

Claimants allege that negligence by Aries, Fugro, and Fieldwood caused the incident.[8] In their briefing[9] in opposition to summary judgment motions[10] currently pending before the Court, claimants argue that the RAM XVIII listed and capsized because the preloading process[11] was performed incorrectly or not performed at all, or because one leg of the vessel slipped into a "hole or impression left by another rig or vessel" (sometimes referred to as "can holes") on the sea floor.[12] In support of their arguments, they submitted an expert report by Bintcliffe.

Bintcliffe's CV, which is attached to his report, indicates that he is an engineer with approximately 16 years of experience working in the oil and gas sector, and has

---

[4] R. Doc. No. 1.

[5] R. Doc. Nos. 6, 13. Six of the seven claimants were employed by Fluid Crane and Construction. The seventh, Glenn Gibson, was employed by United Fire and Safety. Fluid Crane and United Fire and Safety are parties to this matter but not the instant motion.

[6] E.D. La. Case No. 19-13138.

[7] R. Doc. No. 51.

[8] R. Doc. Nos. 6, 13; E.D. La. Case No. 19-13138, R. Doc. No. 1.

[9] R. Doc. Nos. 188, 196, 204.

[10] R. Doc. Nos. 151, 159, 161.

[11] "Preloading" is a process in which the vessel intentionally takes on water in tanks and lifts slightly out of the water in order "to ensure that the leg pads are on stable ground and will not punch through the seabed" when the vessel is jacked up to full working height. R. Doc. No. 151-1, at 9; *accord* R. Doc. No. 204, at 2.

[12] R. Doc. No. 204, at 9 (arguing that any preload conducted was improper); *id.* at 12 (arguing that no preload was conducted); *id.* at 13 (arguing that one leg of the vessel slipped into a hole or impression on the sea floor).

experience working with marine operations, including liftboats.[13] Bintcliffe's report purports to provide opinions "on the operations and causation of the listing and capsize of the Aries RAM XVIII."[14] After setting forth the factual background of the incident, the report concludes with 13 "process and competency failures." In addition to these opinions, claimants provided, as an attachment to their opposition to the instant motion, a declaration by Bintcliffe dated December 5, 2022, which contains the same opinions as those provided in his report, plus additional information regarding his qualifications and conclusions.[15]

Aries, Fieldwood, and Fugro (collectively, "defendants") ask this Court to exclude Bintcliffe's report and testimony on the grounds that it fails to comply with Federal Rule of Evidence 702 and the standards set out in *Daubert v. Merrell Dow Pharmacies, Inc.*, 509 U.S. 759, 588 (1993). They also object to the Bintcliffe's December 5 declaration as both untimely and unreliable.[16]

## II.   STANDARD OF LAW

### a. Admissibility of Expert Testimony

Federal Rule of Evidence 702 governs the admissibility of expert witness testimony. *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 588 (1993); *United States v. Hitt*, 473 F.3d 146, 148 (5th Cir. 2006). Rule 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

---

[13] R. Doc. No. 157-2, at 15−16.
[14] R. Doc. No. 157-2, at 3.
[15] R. Doc. No. 193-7.
[16] R. Doc. No. 223, at 3.

3

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

"To qualify as an expert, 'the witness must have such knowledge or experience in [his] field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth.'" *United States v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004) (quoting *United States v. Bourgeois*, 950 F.2d 980, 987 (5th Cir. 1992)). An expert need not be "highly qualified in order to testify about a given issue" as "[d]ifferences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009).

*Daubert* "provides the analytical framework for determining whether expert testimony is admissible under Rule 702." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002). Both scientific and nonscientific expert testimony is subject to the *Daubert* framework, which requires a trial court to make a preliminary assessment to "determine whether the expert testimony is both reliable and relevant." *Burleson v. Tex. Dep't of Crim. Just.*, 393 F.3d 577, 584 (5th Cir. 2004); *see Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999).

A number of nonexclusive factors may be considered with respect to the reliability inquiry, including: (1) whether the technique has been tested, (2) whether the technique has been subjected to peer review and publication, (3) the technique's

potential error rate, (4) the existence and maintenance of standards controlling the technique's operation, and (5) whether the technique is generally accepted in the relevant scientific community. *Burleson*, 393 F.3d at 584.

The reliability inquiry must remain flexible, however, as "not every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004); *see Runnels v. Tex. Children's Hosp. Select Plan*, 167 F. App'x 377, 381 (5th Cir. 2006) ("[A] trial judge has 'considerable leeway' in determining 'how to test an expert's reliability.'" (quoting *Kumho Tire*, 526 U.S. at 152)). "Both the determination of reliability itself and the factors taken into account are left to the discretion of the district court consistent with its gatekeeping function under [Rule] 702." *Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000).

As for determining relevancy, the proposed testimony must be relevant "not simply in the way all testimony must be relevant [under Rules 401 and 402], but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003). "There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute." *Vogler v. Blackmore*, 352 F.3d 150, 156 n.5 (5th Cir. 2003) (quoting Fed. R. Evid. 702, Advisory Committee Note).

"[W]hen expert testimony is challenged under Rule 702 and *Daubert*, the burden of proof rests with the party seeking to present the testimony." *Kennedy v. Magnolia Marine Transp. Co.*, 189 F. Supp. 3d 610, 615 (E.D. La. 2016) (Africk, J.). The Court applies a preponderance of the evidence standard when performing its gatekeeping function under *Daubert*. *See Daubert*, 509 U.S. at 592 n.10. And the Court is not bound by the rules of evidence—except those rules concerning privileges—when doing so. *See id.*

The Fifth Circuit has recognized "that the importance of the trial court's gatekeeper role is significantly diminished in bench trials, as in this instance, because, there being no jury, there is no risk of tainting the trial by exposing a jury to unreliable evidence." *Whitehouse Hotel Ltd. P'ship v. C.I.R.*, 615 F.3d 321, 330 (5th Cir. 2010) (citing *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000)). Even so, "the Court is still required to perform its gate-keeping function" when considering whether expert testimony should be admitted in a bench trial. *United States v. E.R.R. LLC*, No. 19-2340, 2020 WL 2769881, at *3 (E.D. La. May 28, 2020) (Fallon, J.).

**b. Disclosure of Expert Reports**

Litigants must disclose the identities of expert witnesses and the subject matter of their testimony "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). "If a party fails to provide information or identify a witness as required by Rule 26(a). . . the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Therefore, "[a]n

expert witness may not testify to subject matter beyond the scope of the witness's expert report unless the failure to include that information in the report" is "substantially justified or harmless" pursuant to Rule 37. *Rembrandt Vision Techs., LP v. Johnson & Johnson Vision Care, Inc.*, 725 F.3d 1377, 1381 (5th Cir. 2013).

"In determining whether a violation of Rule 26 is harmless or substantially justified, a court considers: '(1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose.'" *Ambrose v. State Farm Mut. Auto. Ins. Co.*, No. 20-1011, 2021 WL 2284299, at *3 (E.D. La. June 4, 2021) (Morgan, J.) (citing *Tex. A&M Rsch. Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003)).

## III.   ANALYSIS

### a.  Bintcliffe's Expert Report

Defendants argue that Bintcliffe's report should be excluded because Bintcliffe lacks relevant experience,[17] fails to offer explanation or methodology in support of his opinions,[18] relies on insufficient data,[19] and makes impermissible credibility determinations and legal conclusions.[20]

As this is a bench trial, this Court's function as gatekeeper "is significantly diminished." *Whitehouse Hotel Ltd. P'ship*, 615 F.3d at 330. Having reviewed

---

[17] R. Doc. No. 157-1, at 12.
[18] Id.
[19] Id. at 15.
[20] Id. at 16.

Bintcliffe's report and defendants' objections to it, the Court concludes exclusion of Bintcliffe's report is not warranted at this time. Defendants may challenge the reliability of Bintcliffe's opinions through cross-examination and objection at trial.

### b. Bintcliffe's December 5, 2022 Declaration

The Court next addresses the sworn declaration that claimants attached to their opposition to the instant motion. Claimants' deadline to provide written expert reports in this matter was September 16, 2022.[21] Therefore, to the extent that claimants attempt to use Bintcliffe's declaration to supplement the expert report, that attempt runs afoul of Rules 26(a)(2)(D) and 37(c)(1). Neither party addresses whether this untimeliness is harmless or substantially justified. *Ambrose*, 2021 WL 2284299, at *3.

If claimants intend to offer information contained in the declaration, but not in the original report, defendants must be given a chance to depose Bintcliffe on those additional opinions. Even if defendants decide not to re-depose Bintcliffe, they will be given a chance to amend their own expert report in response to the newly added opinions. Accordingly,

**IT IS ORDERED** that defendants' motion *in limine* is **DENIED**.

**IT IS FURTHER ORDERED** that defendants may re-depose Bintcliffe regarding the opinions offered in the declaration prior to **FEBRUARY 16, 2023**.

---

[21] R. Doc. No. 117, at 2.

Defendants may also amend their expert report to respond to opinions offered in the declaration no later than **JANUARY 31, 2023**.

New Orleans, Louisiana, January 17, 2023.

                                               **LANCE M. AFRICK**
                             **UNITED STATES DISTRICT JUDGE**