UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN THE MATTER OF<br>ARIES MARINE<br>CORPORATION, ET AL. | CIVIL ACTION<br><br>No. 19-10850<br>c/w 19-13138<br>REF: ALL CASES<br><br>SECTION I |

## ORDER & REASONS

Before the Court is a motion[1] for summary judgment filed by petitioner-in-limitation Aries Marine Corporation ("Aries"). Claimants Calvin Abshire, Glenn Gibson, Tomas Arce Perez, Lee Bob Rose, Gilberto Gomez Rozas, Gabriel Vilano, and Ronald Williams (collectively, "claimants") oppose[2] the motion. For the reasons below, the Court denies the motion.

### I.   FACTUAL BACKGROUND

This matter arises from a November 18, 2018 incident involving the RAM XVIII, a 195-gross-ton liftboat[3] owned and operated by Aries.[4] At the relevant time, the RAM XVIII was placed in the West Delta 68-U ("WD 68-U") region on the Outer

---

[1] R. Doc. No. 151.
[2] R. Doc. No. 204. Claimants previously filed joint oppositions to the instant motion at R. Doc. Nos. 177 and 189. Each of these previously filed oppositions contained the same memorandum as that filed as R. Doc. No. 204, but lacked a statement of material facts and certain exhibits. To reduce confusion, the Court granted claimants permission to refile their opposition memorandum with all relevant attachments included. R. Doc. No. 200.
[3] A liftboat is a self-elevating vessel used in offshore mineral exploration and production. *E.g.*, R. Doc. No. 204, at 1.
[4] R. Doc. No. 151-26, ¶ 1; R. Doc. No. 204-1, at 1.

Continental Shelf in the Gulf of Mexico.[5] The RAM XVIII was chartered to provide services in support of the work to be performed by claimants on a platform located in the WD 68-U area.[6]

The RAM XVII arrived at the work location on November 16, 2018.[7] As planned, the starboard leg of the vessel was placed into an existing "can hole."[8] To achieve this, the vessel's port leg was placed in the same location where previous liftboats had placed their legs.[9]

Aries asserts that, once the vessel's legs were placed, the vessel went through a "preload process" intended "to ensure that the leg pads [were] on stable ground and [would] not punch through the seabed."[10] According to Aries, during this process the vessel's tanks were filled with water to add weight, the vessel was lifted 5 feet out of the water, and the captain leaned the vessel on one leg at a time for 20 to 30 minutes each.[11] Aries asserts that this process began at 2 P.M. on November 16th and ended at 3 A.M. on November 17th.[12]

Claimants disagree with Aries' account of the preload. They assert that the preload was improperly completed because the vessel used its cranes while

---

[5] R. Doc. No. 151-26, ¶ 30; R. Doc. No. 204-1, at 3–4. Aries Marine and claimants disagree over the exact location of the WD 68-U region. R. Doc. No. 204-1, at 2–3.
[6] R. Doc. No. 151-26, ¶¶ 17–18; R. Doc. No. 204-1, at 2. The exact scope of the charter is disputed. R. Doc. No. 204-1, at 2.
[7] R. Doc. No. 151-26, ¶ 30; R. Doc. No. 204-1, at 3–4.
[8] R. Doc. No. 151-26, ¶ 40; R. Doc. No. 204-1, at 4–5.
[9] R. Doc. No. 151-26, ¶ 44; R. Doc. No. 204-1, at 4–5.
[10] R. Doc. No. 151-26, ¶ 50.
[11] *Id.* ¶¶ 53–56.
[12] *Id.* ¶ 51.

preloading, in violation of Aries' internal policies,[13] and because the captain did not jack up the hull of the vessel to the height required by Aries' policies.[14]

Alternatively, claimants argue that during the time the vessel was allegedly preloading, it in fact "jacked[ ] up to approximately 50 feet above the water" to allow workers to board the vessel via a walkway, and therefore the vessel "may not have preloaded at all."[15] Aries maintains that the workers were transferred to the vessel using a crane, and that the vessel did perform a preload.[16]

The parties agree that, regardless of when the vessel was raised, the RAM XVIII and the construction crew worked without incident throughout the day of November 17, 2018.[17] Then, at approximately 1:30 A.M. on November 18, 2018, the captain noticed the bathroom door in his bunk room moving, and the vessel's tilt alarm rang shortly afterward.[18] The captain attempted to correct the vessel's listing, but he was unable to do so. All occupants were evacuated, and the vessel ultimately sank.

After this incident, Aries filed a complaint for exoneration or limitation of liability in this Court.[19] The seven claimants, all of whom were present on the vessel during the incident, then filed answers and claims.[20] Claimants also filed a separate

---

[13] R. Doc. No. 189, at 10.
[14] *Id.* at 11.
[15] *Id.* at 12 (citing worker testimony to this effect).
[16] R. Doc. No. 151-26, ¶ 66.
[17] R. Doc. No. 151-26, ¶¶ 73−76, R. Doc. No. 204, 14−15.
[18] R. Doc. No. 151-26, ¶¶ 77−78; R. Doc. No. 204, 14−15.
[19] R. Doc. No. 1.
[20] R. Doc. Nos. 6, 13. Six of the seven claimants were employed by Fluid Crane and Construction. The seventh, Glenn Gibson, was employed by United Fire and Safety.

complaint[21] against Fugro USA Marine, Inc. ("Fugro"), and Fieldwood Energy LLC ("Fieldwood"). That matter was consolidated with the exoneration and limitation action.[22]

In the instant motion, Aries asks this Court to find that it is entitled to exoneration as a matter of law, and to dismiss all of claimants' claims against it. In the alternative, Aries asks this Court to find that it is entitled to limit its liability to the post-incident value of the RAM XVIII and any pending freight, and to dismiss any claim for punitive damages.

## II. STANDARD OF LAW

Summary judgment is proper when, after reviewing the pleadings, the discovery and disclosure materials on file, and any affidavits, a court determines that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of a material fact; it need only point out the absence of evidence supporting the other party's case. *Id.*; *see also Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195–96 (5th Cir. 1986) ("There is no sound reason why conclusory allegations should

---

[21] E.D. La. Case No. 19-13138.
[22] R. Doc. No. 51.

4

suffice to require a trial when there is no evidence to support them even if the movant lacks contrary evidence.").

Once the party seeking summary judgment carries that burden, the nonmoving party must come forward with specific facts showing that there is a genuine dispute of material fact for trial. *See Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Rather, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"Although the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible . . . the material may be presented in a form that would not, in itself, be admissible at trial." *Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017) (citations omitted). The party responding to the motion for summary judgment may not rest upon the pleadings but must identify specific facts that establish a genuine issue. See *Anderson*, 477 U.S. at 248. The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255.

If the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must then articulate specific facts showing a genuine issue and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A), (c)(2). These facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "A non-movant will not avoid summary judgment by presenting speculation, improbable inferences, or unsubstantiated assertions." *Lawrence v. Fed. Home Loan Mortg. Corp.*, 808 F.3d 670, 673 (5th Cir. 2015) (quotation and citation omitted). If the nonmovant fails to meet their burden of showing a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075–76.

This matter is set for a bench trial. Therefore, so long as "the evidentiary facts are not disputed and there are no issues of witness credibility," *Manson Gulf, L.L.C. v. Modern Am. Recycling Serv.*, 878 F.3d 130, 134 (5th Cir. 2017), "the district court has the limited discretion to decide that the same evidence, presented to him or her as a trier of fact in a plenary trial, could not possibly lead to a different result." *Jones v. United States*, 936 F.3d 318, 321–22 (5th Cir. 2019) (quotation and citation omitted).

### III. ANALYSIS

"When a court determines whether a shipowner is entitled to exoneration or limitation of liability, it employs a two-step process." *Archer Daniels Midland, Co. v.*

*M/T AMERICAN LIBERTY,* 545 F. Supp. 3d 390, 402 (E.D. La. 2021) (Fallon, J.) (quotations and citations omitted). "First, the party seeking to dissolve limitation must establish that the vessel was negligent or unseaworthy, and those acts caused the accident." *Id.* (quotation and citation omitted). If the claimants do not make this showing, the vessel owner is entitled to exoneration. If negligence or unseaworthiness is established, then "the burden shifts to the owner of the vessel to prove that negligence or unseaworthiness was not within the owner's privity or knowledge." *Id.* (quotation, citation, and alteration omitted). If the owner of the vessel makes that showing, then it is entitled to limit its liability to the value of the vessel and pending freight. *In re Omega Protein, Inc.*, 548 F.3d 361, 371 (5th Cir. 2008) (citing 46 U.S.C. § 30505(a)).

### a. Exoneration

The Court first addresses exoneration. Claimants' claims arise under 33 U.S.C. § 905(b) of the Longshore and Harbor Workers' Compensation Act ("LHWCA").[23] That statute "provides longshoremen and other maritime workers with a negligence cause of action against vessel owners." *Anthony v. Deep South Airboats*, No. 21-1070, 2021 WL 4460319, at *2 (E.D. La. Sept. 29, 2021) (Ashe, J.).

*In Scindia Steam Navigation Co v. De Los Santos*, the Supreme Court held that a vessel owner's duties under § 905(b) are limited to: (1) the "turnover duty," which requires the vessel owner to turn over a reasonably safe ship, (2) the "active

---

[23] R. Doc. No. 151-1; R. Doc. No. 204, at 22 & n.117 (stating that the claimants are "longshore workers" who have the "right to bring claims against third-party vessel owners like Aries under general maritime law via 33 U.S.C. § 905(b)").

7

control duty," which requires the vessel owner to protect against hazards under the active control of the vessel, and (3) the "duty to intervene," which requires that the vessel owner intervene when it "knows of a serious hazard and the stevedore improvidently decides to ignore that risk." *Guidry v. Noble Drilling Servs. Inc.*, No. 16-4135, 2018 WL 1631327, at *3 (E.D. La. Apr. 4, 2018) (Feldman, J.); *Scindia Stream Navigation Co. v. De Los Santos*, 451 U.S. 156, 170 (1981).

"To be a legal cause of a plaintiff's injury, breach of a *Scindia* duty must be a 'substantial factor in the injury.'" *Moore v. M/V ANGELA*, 353 F.3d 376, 383 (5th Cir. 2003) (quoting *Donaghey v. ODECO*, 974 F.2d 646, 649 (5th Cir.1992)). "Although posited in *Scindia* in terms of stevedoring operations, [the Fifth Circuit's] jurisprudence generally has extended this reading of the section 905(b) negligence action to other independent contractors falling under the Longshore and Harbor Worker's Act." *Manuel v. Cameron Offshore Boats, Inc.*, 103 F.3d 31, 33 n.6 (5th Cir. 1997).

Though claimants state that they are longshore workers within the meaning of the LHWCA, and that they bring their claims against Aries pursuant to 33 U.S.C. § 905(b),[24] they do not state which of the *Scindia* duties they believe Aries breached. Aries asserts that this matter likely falls within the "active control duty."[25] Both Aries and claimants assume, however, that general principles of maritime negligence law

---

[24] R. Doc. No. 204, at 22 & n.117.
[25] R. Doc. No. 151-1, at 18.

8

apply.[26] The parties further agree[27] that, in order to succeed, the claimants must show (1) that Aries Marine owed claimants a duty; (2) that Aries Marine breached that duty; (3) that the claimants sustained damages; and (4) that the breach caused claimants' damages. *See Kiwia v. Bulkship Mgmt, A.S.*, No. 21-30353, 2022 WL 3006214, at *2 (per curiam) (unreported) (5th Cir. July 28, 2022) ("To prevail on a § 5(b) negligence claim, the plaintiff must prove duty, breach, causation, and damages." (citing 1 THOMAS J. SCHOENBAUM, ADMIRALTY & MARITIME LAW § 7:14, at 703 (6th ed. 2020))).

Aries Marine asserts that the claimants lack evidence for—and have therefore failed to raise genuine issues of material fact as to—duty, breach, and causation.[28] Claimants offer two theories as to why the listing incident occurred: first, that one of the vessel's legs experienced a "punch-through event," in which the port leg further penetrated the seabed, and second, that "its port leg slid into a nearby hole or impression left by another rig or vessel." Claimants argue that Aries was negligent under either theory.

The Court concludes that the factual dispute as to whether the RAM XVIII performed a preload before jacking up to allow the workers to cross via a walkway precludes summary judgment. Aries itself states that the preload is performed "to ensure that the leg pads are on stable ground and will not punch through the

---

[26] *Id.*; R. Doc. No. 204, at 7.
[27] *See* R. Doc. No. 151-1, at 18–19; R. Doc. No. 204, at 7.
[28] R. Doc. No. 151-1, at 19.

seabed."[29] Both parties indicate that Aries' captain was responsible for performing the preloading process.[30] If, as claimants argue, the captain did not perform a preload, that could constitute negligence in an area under the vessel's "active control," and could have been a "substantial factor" in causing a punch through event. *See Blanchard v. Weeks Marine, Inc.*, No. 13-5089, 2014 WL 1414640, at *5 (E.D. La. Apr. 11, 2014) (Africk, J.) (noting that, under the § 905(b) "active control" duty, "a vessel owner no longer retains the primary responsibility for safety in a work area turned over to an independent contractor, [but] no such cession results as relates to areas or equipment over which the vessel's crew retains operational control"); *Guidry*, 2018 WL 1631327, at *3; *Moore*, 353 F.3d at 383.

Because the Court concludes that this dispute constitutes a genuine dispute of material fact precluding summary judgment, it defers consideration of the remainder of the parties' arguments until trial.

### b. Limitation of Liability

Aries alternatively requests that this Court find that it is entitled to limit its liability to the value of the RAM XVIII and any pending freight at the end of the voyage. As stated above, in order to be entitled to limitation, Aries must show that any negligence that occurred was not within its privity or knowledge. *Archer Daniels Midland*, 545 F. Supp. 3d at 402. The Court concludes that summary judgment on this issue is not warranted.

---

[29] *Id.* at 9.
[30] See R. Doc. No. 151-26, ¶¶ 49−65; R. Doc. No. 204-1, at 7−13.

First, the Court notes that, pursuant to 46 U.S.C. § 30506, in the case of a "seagoing vessel," "privity or knowledge of the master or the owner's superintendent or managing agent, at or before the beginning of each voyage, is imputed to the owner." Though the statute does not define "seagoing vessel," the Fifth Circuit has defined the term as meaning a vessel that is either intended to navigate or does navigate beyond twelve nautical miles from the coast of the United States. *Matter of Talbott Big Foot, Inc.*, 854 F.2d 758, 761 (5th Cir. 1988). Claimants assert,[31] and Aries does not dispute, that the RAM XVIII is a seagoing vessel within the meaning of the statute. Moreover, the parties agree that the RAM XVIII was located more than twelve nautical miles from the coast at the time of the incident,[32] and the record suggests that the vessel navigated there itself.[33] Accordingly, to the extent negligent acts took place before the beginning of the voyage, knowledge and privity appear to be imputed to Aries.

Even if privity and knowledge are not imputed pursuant to § 30506, claimants have pointed to evidence that, if credited, could support Aries' privity or knowledge of negligence, namely: providing an allegedly unqualified captain and allegedly

---

[31] R. Doc. No. 204, at 20.
[32] Aries states that the WD 68-U block is approximately 20 nautical miles west of Southwest Pass, Louisiana, while claimants maintain that it is approximately 15 nautical miles south-southeast of Grand Isle, Louisiana. R. Doc. No. 204-1, at 1–2. The parties therefore seem to agree that the RAM XVIII was located more than 12 nautical miles from the coast of the United States.
[33] *E.g.*, R. Doc. No. 151-26, ¶ 30 ("The RAM XVIII then proceeded to the West Delta 68 field on the OCS."), ¶ 35 ("As the RAM XVIII neared the WD-68U platform, Plaisance contacted the platform by radio to request permission to proceed closer than 500 feet.").

11

failing to properly train the captain as to how to operate the RAM XVIII in foreseeable conditions. *See Matter of Dredge Big Bear*, 525 F.Supp.3d 731, 740 (M.D. La. 2021) ("Privity and knowledge exist where a vessel owner fails to provide training needed to operate the vessel safely in known or foreseeable conditions."). Accordingly, the Court finds that summary judgment as to limitation of liability is not warranted.

### c. Punitive Damages

Aries requests that this Court dismiss all punitive damages claims against it. Aries asserts that punitive damages are unavailable as a matter of law because (1) "punitive damages are only recoverable against a third-party tortfeasor by a longshore worker who is injured in state territorial waters" and (2) claimants lack evidence of willful and wanton conduct on Aries' part.[34]

In support of its first argument, Aries cites only *Sinegal v. Merit Energy Co.*, in which the court held "that general maritime law precludes claims for loss of consortium for injuries to longshoreman that occur outside of the territorial waters of the United States." No. 07-1740, 2010 WL 1335151, at *3 (W.D. La. Mar. 29, 2010) (citing *Nichols v. Petroleum Helicopters, Inc.*, 17 F.3d 119, 122–123 (5th Cir. 1994)). That case does not discuss the availability of punitive damages, and Aries does not explain how the case supports its position.[35]

---

[34] R. Doc. No. 151-1, at 24−25.
[35] In its reply in support of its motion, Aries states that it "maintains that it has a good faith basis legal argument regarding the non-availability of [ ] punitive damages for longshore workers injured outside of territorial waters," R. Doc. No. 231, at 8, but does not explain what that basis is.

Punitive damages may be available in claims brought pursuant to § 905(b). *Bommarito v. Belle Chasse Marine Transp.*, No. 21-204, 2022 WL 2149445, at *8 (E.D. La. June 10, 2022) (Fallon, J.); *In re Rodi Marine LLC*, No. 17-5394, 2019 WL 861251, at *3 (E.D. La. Feb 22, 2019) (Morgan, J.) (noting that the Fifth Circuit has left the question open and collecting district court opinions holding that punitive damages may be recovered under § 905(b)). "To recover punitive damages, [c]laimants must demonstrate the defendant engaged in behavior that is more than merely negligent; rather, the court looks for gross negligence, reckless or callous disregard for the rights of others or actual malice or criminal indifference." *In re Rodi Marine LLC*, 2019 WL 861251, at *3 (cleaned up).

For largely the same reasons that preclude summary judgment as to exoneration and limitation, the Court concludes that summary judgment on punitive damages is likewise not warranted.

## IV. CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that Aries' motion[36] for summary judgment is **DENIED**.

New Orleans, Louisiana, January 19, 2023.

                                         **LANCE M. AFRICK**
                          **UNITED STATES DISTRICT JUDGE**

---

[36] R. Doc. No. 151.