UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN THE MATTER OF<br>ARIES MARINE<br>CORPORATION, ET AL. | CIVIL ACTION<br><br>No. 19-10850<br>c/w 19-13138<br>REF: ALL CASES |

SECTION I

### ORDER & REASONS

Before the Court is a motion[1] for summary judgment filed by defendant Fugro USA Marine ("Fugro"). Claimants Calvin Abshire, Glenn Gibson, Tomas Arce Perez, Lee Bob Rose, Gilberto Gomez Rozas, Gabriel Vilano, and Ronald Williams (collectively, "claimants") oppose[2] the motion. For the reasons below, the Court grants the motion.

### I.  FACTUAL BACKGROUND

This matter arises out of a November 18, 2018 incident in which the RAM XVIII, a liftboat owned and operated by Aries Marine Corporation ("Aries"), and chartered by Fieldwood Energy, LLC ("Fieldwood"), capsized in the Gulf of Mexico. Fugro was hired to assist in positioning the liftboat by providing GPS positioning and performing a sonar scan for debris or obstructions on the sea floor.[3] To this end, Fugro provided plats that showed where prior vessels had been placed in the area, as well

---

[1] R. Doc. No. 159.
[2] R. Doc. No. 188.
[3] R. Doc. No. 159-2, ¶ 1; R. Doc. No 188-20, at 1.

as sonar imaging of the sea floor, and it assisted with GPS positioning of the vessel.[4] The images provided only showed the impressions left by vessels that Fugro had helped to position, and Fugro acknowledges that it is therefore possible that there were holes and impressions present in the area that were not reflected in the data it provided to Aries.[5]

After this incident, Aries filed a complaint for exoneration or limitation of liability in this Court.[6] The seven claimants, all of whom were present on the vessel during the incident, then filed answers and claims.[7] Claimants also filed a separate case[8] against Fugro and Fieldwood, alleging that Fugro and Fieldwood were negligent with regard to their involvement in the incident.[9] That matter was consolidated with the limitation action.[10] Fugro seeks summary judgment with respect to claimants' negligence claims against it.[11]

## II.    STANDARD OF LAW

Summary judgment is proper when, after reviewing the pleadings, the discovery and disclosure materials on file, and any affidavits, a court determines that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[A] party seeking summary judgment always

---

[4] R. Doc. No. 159-2, ¶ 1; R. Doc. No. 188-20, at 1.
[5] R. Doc. No. 230, at 4.
[6] R. Doc. No. 1.
[7] R. Doc. Nos. 6, 13. Six of the seven claimants were employed by Fluid Crane and Construction. The seventh, Glenn Gibson, was employed by United Fire and Safety.
[8] E.D. La. Case No. 19-13138.
[9] E.D. La. Case No. 19-13138, R. Doc. No. 1, ¶ 24.
[10] R. Doc. No. 51.
[11] R. Doc. No. 159-4, at 1.

bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of a material fact; it need only point out the absence of evidence supporting the other party's case. *Id.*; *see also Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195–96 (5th Cir. 1986) ("There is no sound reason why conclusory allegations should suffice to require a trial when there is no evidence to support them even if the movant lacks contrary evidence.").

Once the party seeking summary judgment carries that burden, the nonmoving party must come forward with specific facts showing that there is a genuine dispute of material fact for trial. *See Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Rather, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"Although the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible . . . the material may be presented in a form that would not, in itself, be admissible at trial." *Lee v. Offshore*

*Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017) (citations omitted). The party responding to the motion for summary judgment may not rest upon the pleadings but must identify specific facts that establish a genuine issue. See *Anderson*, 477 U.S. at 248. The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255.

If the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must then articulate specific facts showing a genuine issue and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A), (c)(2). These facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "A non-movant will not avoid summary judgment by presenting "speculation, improbable inferences, or unsubstantiated assertions." *Lawrence v. Fed. Home Loan Mortg. Corp.*, 808 F.3d 670, 673 (5th Cir. 2015) (quotation and citation omitted). If the nonmovant fails to meet their burden of showing a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075–76.

This matter is set for a bench trial. Therefore, so long as "the evidentiary facts are not disputed and there are no issues of witness credibility," *Manson Gulf, L.L.C. v. Modern Am. Recycling Serv.*, 878 F.3d 130, 134 (5th Cir. 2017), "the district court has the limited discretion to decide that the same evidence, presented to him or her

4

as a trier of fact in a plenary trial, could not possibly lead to a different result." *Jones v. United States*, 936 F.3d 318, 321–22 (5th Cir. 2019) (quotation and citation omitted).

### III. ANALYSIS

Claimants' claims against Fugro arise under the general maritime laws of the United States.[12] The parties agree that, to prevail, the claimants must establish that Fugro owed claimants a duty, that Fugro breached that duty, that the breach actually and proximately caused the claimants' injuries, and that claimants were in fact injured.[13] *In re Cooper/T. Smith*, 929 F.2d 1073, 1077 (5th Cir. 1991).

"Under maritime law, a plaintiff is owed a duty of ordinary care under the circumstances." *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 211 (5th Cir. 2010) (citation omitted). The determination of the scope of that duty "involves a number of factors, including most notably the foreseeability of the harm suffered by the complaining party." *Consol. Aluminum Corp. v. C.F. Bean Corp.*, 833 F.2d 65, 67 (5th Cir. 1987). "General maritime negligence includes the concept of a duty to warn where harm is reasonably foreseeable." *Antares Mar. PTE, Ltd. v. Bd. of Comms. Port of New Orleans*, 516 F. Supp. 3d 577, 582 & n.39 (E.D. La. 2021) (Vitter, J.) (citing *Daigle v. Point Landing, Inc.*, 616 F.2d 825, 827 (5th Cir. 1980)).

---

[12] E.D. La. Case No. 19-13138, R. Doc. No. 1, at ¶ 3. Fugro is not the vessel owner, and claimant's claims against Fugro therefore do not implicate 33 U.S.C. § 905(b) of the Longshore and Harbor Workers' Compensation Act ("LHWCA"). Additionally, 33 U.S.C. § 933 "preserves and codifies a maritime worker's common law right to pursue a negligence claim against a third party" such as Fugro. *McLaurin v. Noble Drilling (US) Inc.*, 529 F.3d 285, 291 (5th Cir. 2008).

[13] R. Doc. No. 188, at 8; R. Doc. No. 230, at 4.

5

"Under maritime law, causation requires that the negligence be 'a substantial factor' in the injury." *SCF Waxler Marine, LLC v. Aris T M/V*, 24 F.4th 458, 477 (5th Cir. 2022) (quoting *Donaghey v. Ocean Drilling & Expl. Co.*, 974 F.2d 646, 649 (5th Cir. 1992)) "If the plaintiff's injury would have occurred in the absence of the defendant's act or omission, then the defendant's conduct is not a substantial factor." *Dixie Marine, Inc. v. Q Jake M/V*, No. 16-12415, 2017 WL 3600574, at *10 (E.D. La. Aug. 22, 2017) (Barbier, J.).

Claimants' opposition to Fugro's motion repeatedly places the blame for the listing incident on the contention that Aries' captain performed an allegedly improper preload, or failed to preload at all.[14] Claimants do not assert that Fugro was responsible for the preload—indeed, they state that Fugro was hired "to assist [the] Captain [ ] with GPS positioning and to perform a sonar scan for hazards."[15]

Still, claimants fault Fugro for failing to tell the captain that its plat "only showed can holes and impressions for those vessels that [Fugro] had been hired to help position, and it was possible other jack-ups and vessels had worked in the area and were not depicted on the plat."[16] They assert that Fugro owed them a duty (1) to advise the captain that there could be additional can holes in the siting area, (2) to advise the captain that there were dark spots on the sonar images that might be

---

[14] *Id.* at 12; *id.* at 14 ("The RAM was not properly preloaded and experienced a punch through because the soil below the footing was not adequately tested due to the improper preload or the port leg was near a can hole and again fell into the canhole as a result of the improper preload.")
[15] *Id.* at 9.
[16] *Id.* at 11

additional can holes, and (3) to exercise "stop work authority" when one leg of the vessel penetrated deeper than had allegedly been expected.[17]

As stated, Fugro owed "a duty to warn where harm is reasonably foreseeable." *Antares Mar. PTE, Ltd.*, 516 F. Supp. 3d at 582 & n.39. Even assuming that Fugro had a duty to advise the captain as to the possibility of additional can holes and to "exercise 'stop work authority'" after initial penetration of the vessel's legs, claimants have not pointed to evidence supporting an inference that Fugro's failure to take these actions was a proximate cause of the incident. Claimants make only unsupported assertions as to causation, stating that Fugro's alleged breaches of duty "likely contributed to the listing of the RAM XVIII."[18] But, in the very next sentence, they state that "[u]ltimately, the RAM fell because Captain Plaisance failed to properly preload [the vessel]."[19] Under claimants' own account, therefore, it is Aries (through the acts of its captain), not Fugro, that is responsible for the incident.

---

[17] Claimants' opposition is unclear as to which leg of the vessel is at issue here, referring alternatively to the starboard leg and the stern leg. R. Doc. No. 188, at 11, 13. The basis for the proposition that the leg penetrated "deeper than expected" is also unclear because the captain testified that the stern leg's penetration did not surprise him. R. Doc. No. 188-5, at 99:22−:24 (Q: "Did it surprise you that the stern leg went down 8 to 10 feet?" A: "No."). He did also testify, however, that he believed the stern leg may have been near a canhole that was wider than picture on the Fugro imaging. *Id.* at 103:6−:13. Fugro objects to this testimony as speculative and improper opinion evidence, and notes that there is no evidence that any issue with the stern leg caused the failure of the port leg. R. Doc. No. 230, at 5.
[18] *Id.* at 12.
[19] *Id.*

7

Plaintiffs' expert states, in a sworn declaration, that it is "possible . . . that the port leg fell into a nearby depression or hole."[20] But he also opines that "[f]ailure of a self-elevating vessel normally occurs during the preloading process" and that "failure of [a] self-elevating unit after preloading . . . can be attributed to" either "preloading [not being] completed to the required level" or "operational conditions exceed[ing] the preload limit and therefore the preload was not adequate."[21] Because these opinions, like the claimants' opposition, place the blame for the incident on preloading, which was not Fugro's responsibility, they do not provide a basis for denying Fugro's motion.

Claimants have failed to articulate a theory of causation supported by the record evidence. They have therefore failed to identify a genuine issue of material fact precluding summary judgment on their claims of negligence against Fugro.[22] Fugro's motion will therefore be granted. Accordingly,

**IT IS ORDERED** that Fugro's motion[23] for summary judgment is **GRANTED**.

**IT IS FURTHER ORDERED** that claimants' claims against Fugro are **DISMISSED WITH PREJUDICE**.

---

[20] R. Doc. No. 188-2, ¶ 35. The Court notes that an opinion that an event is "possible" is not a basis for concluding that the event more likely than not took place.
[21] *Id.* ¶ 36.
[22] As causation is an essential element of claimants' claims, their failure to establish it warrants granting Fugro's motion without consideration of whether Fugro owed the alleged duties and whether it breached them.
[23] R. Doc. No. 159.

New Orleans, Louisiana, February 1, 2023.

                                                     **LANCE M. AFRICK**
                                     **UNITED STATES DISTRICT JUDGE**