UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN THE MATTER OF  CIVIL ACTION
ARIES MARINE
CORPORATION, ET AL.  No. 19-10850
c/w 19-13138
REF: ALL CASES

SECTION I

ORDER & REASONS

Before the Court is a motion[1] for summary judgment filed by Fieldwood Energy LLC ("Fieldwood"), Aries Marine Corporation ("Aries"), and personal injury claimants Calvin Abshire, Gilberto Gomez Rozas, Lee Bob Rose, Ronald Williams, Gabriel Vilano, Tomas Arce Perez, and Glenn Gibson (collectively, "Fieldwood Group"). Fluid Crane & Construction ("Fluid Crane"), American Longshore Mutual Association ("ALMA"), and Louisiana Workers' Compensation Corporation ("LWCC") oppose the motion.[2] For the reasons below, the Court grants the motion.

I.  FACTUAL BACKGROUND

This Court has previously set forth the background giving rise to this matter. As relevant to the instant motion, Fieldwood entered into separate but substantially identical Master Services Contracts ("MSCs") with Fluid Crane and United Fire & Safety, LLC ("United Fire").[3] Both of these MSCs contained provisions that stated

---

[1] R. Doc. No. 281.
[2] R. Doc. Nos. 286 (joint opposition by Fluid Crane and ALMA), 288 (opposition by LWCC).
[3] R. Doc. No. 281-2, ¶¶ 1, 10; R. Doc. No. 286-3, ¶¶ 1, 10; R. Doc. No. 288-1, ¶¶ 1, 10.

that "[a]ll insurance policies of Contractor [i.e., Fluid Crane and United Fire, respectively] . . . including without limitation those required in accordance with the terms of Exhibit B, shall expressly waive subrogation as to Company Group."[4] The MSCs define "Company Group" as "Company [Fieldwood] . . . and all . . . invitees."[5] Per the terms of "Exhibit B," Fluid Crane and United Fire were each required to procure "[c]overage for the Longshoreman's and Harbor Worker's Act, and including its extension by the Outer Continental Shelf Lands Act."[6]

Separately, Fieldwood entered into a Master Time Charter Agreement ("Time Charter") with Aries.[7] That document provided that "[t]he whole of the vessel shall be at Charterer's disposal reserving proper and sufficient space for the vessel's master, officers, crew, tackle, apparel, furniture, equipment, stores and fuel."[8] It further provided that "the master, although appointed by the Owner, excluding matters of vessel navigation for which the master has exclusive authority, shall be under the general direction of the Charterer as regards employment of the vessel, agencies, or other arrangements, and shall not unreasonably refuse any request to undertake operations or carry out any order or direction specified by Charterer."[9] Pursuant to the time charter, Aries chartered the liftboat RAM XVIII to Fieldwood

---

[4] R. Doc. No. 281-2, ¶¶ 2, 11; R. Doc. No. 286-3, ¶¶ 2, 11; R. Doc. No. 288-1, ¶¶ 2, 11.
[5] R. Doc. No. 281-2, ¶¶ 6, 14; R. Doc. No. 286-3, ¶¶ 6, 14; R. Doc. No. 288-1, ¶¶ 6, 14.
[6] R. Doc. No. 281-2, ¶¶ 3, 12; R. Doc. No. 286-3, ¶¶ 3, 12; R. Doc. No. 288-1, ¶¶ 3, 12.
[7] R. Doc. No. 281-2, ¶ 18; R. Doc. No. 286-3, ¶ 18; R. Doc. No. 288-1, ¶ 18.
[8] R. Doc. No. 281-2, ¶ 19; R. Doc. No. 286-3, ¶ 19; R. Doc. No. 288-1, ¶ 19.
[9] R. Doc. No. 281-2, ¶ 20; R. Doc. No. 286-3, ¶ 20; R. Doc. No. 288-1, ¶ 20.

in relation to work being performed on Fieldwood's WD 68 U platform in the Gulf of Mexico.[10]

As the Court has previously explained, six employees of Fluid Crane and one employee of United Fire asserted claims in this action based on personal injuries allegedly sustained when the RAM XVIII capsized in the Gulf of Mexico. ALMA is Fluid Crane's Longshore and Harbor Worker's Compensation Act ("LHWCA") insurance carrier, and LWCC is United Fire's LHWCA insurance carrier. Therefore, Fluid Crane and ALMA and United Fire and LWCC have paid the claimants' medical compensation and indemnity benefits associated with this incident under the LHWCA.[11] LWCC and ALMA have asserted claims to recover those payments in the instant action.

When ruling on a previous motion for summary judgment, the Court concluded that the MSCs were nonmaritime contracts and that state law therefore applies to their interpretation and enforcement.[12] As a consequence of this holding, the Court determined that the Louisiana Oilfield Anti-Indemnity Act ("LOAIA") rendered the MSCs' indemnification provisions unenforceable.[13] The Court also recently denied a motion for reconsideration with regard to that decision.[14]

In the instant motion, Fieldwood Group argues that Aries, as well as the employees of Fluid Crane and United Fire, were invitees of Fieldwood "and therefore

---

[10] R. Doc. No. 281-2, ¶ 22; R. Doc. No. 286-3, ¶ 22; R. Doc. No. 288-1, ¶ 22.
[11] R. Doc. No. 281-2, ¶¶ 5, 13; R. Doc. No. 286-3, ¶¶ 5, 13; R. Doc. No. 288-1, ¶¶ 5, 13.
[12] R. Doc. No. 241.
[13] *Id.*
[14] R. Doc. No. 297.

also qualify as members of the Company Group in whose favor Fluid Crane and [United Fire] were [ ] obligated to endorse their insurance policies providing LHWCA coverage to waive their respective insurer's rights of subrogation."[15] Fieldwood Group therefore requests that this Court dismiss the claims of ALMA and LWCC.

## II.  STANDARD OF LAW

Summary judgment is proper when, after reviewing the pleadings, the discovery and disclosure materials on file, and any affidavits, a court determines that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of a material fact; it need only point out the absence of evidence supporting the other party's case. *Id.*; *see also Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195–96 (5th Cir. 1986) ("There is no sound reason why conclusory allegations should suffice to require a trial when there is no evidence to support them even if the movant lacks contrary evidence.").

Once the party seeking summary judgment carries that burden, the nonmoving party must come forward with specific facts showing that there is a genuine dispute of material fact for trial. *See Matsushita Elec. Indus. v. Zenith Radio*

---

[15] R. Doc. No. 281, at 1–2.

*Corp.*, 475 U.S. 574, 587 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Rather, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must then articulate specific facts showing a genuine issue and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A), (c)(2). These facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "A non-movant will not avoid summary judgment by presenting "speculation, improbable inferences, or unsubstantiated assertions." *Lawrence v. Fed. Home Loan Mortg. Corp.*, 808 F.3d 670, 673 (5th Cir. 2015) (quotation and citation omitted). If the nonmovant fails to meet their burden of showing a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075–76.

This matter is set for a bench trial. Therefore, so long as "the evidentiary facts are not disputed and there are no issues of witness credibility," *Manson Gulf, L.L.C. v. Modern Am. Recycling Serv.*, 878 F.3d 130, 134 (5th Cir. 2017), "the district court

has the limited discretion to decide that the same evidence, presented to him or her as a trier of fact in a plenary trial, could not possibly lead to a different result." *Jones v. United States*, 936 F.3d 318, 321–22 (5th Cir. 2019) (quotation and citation omitted).

## III. ANALYSIS

### a. Whether Subrogation Was Waived

ALMA and Fluid Crane first argue that the motion should be denied because Fieldwood Group does not "direct the Court to contractual language that waives subrogation nor does it even provide the insurance contract which allegedly waives subrogation."[16] Rather strangely, however, ALMA and Fluid Crane also attach to their opposition the waiver of subrogation endorsement.[17] This endorsement provides:

> [ALMA] waives its rights of subrogation against other individuals, firms, organizations or corporations but only when required by written contract and only to the extent required by that contract. This waiver shall apply only in respect to the specific contract existing between [Fluid Crane] and such other individual, firm, organization or corporation and shall not be construed to be

---

[16] R. Doc. No. 286, at 5. LWCC does not make this argument, and neither LWCC nor ALMA disputes that the MSCs required such waivers to be obtained. ALMA and Fluid Crane briefly rely on *Sapp v. Wood Group PSN, Inc.* in support of their position that the MSC's waiver of subrogation requirement is insufficient to show that the insurers in fact waived subrogation. No. 15-3, 2015 WL 9480466 (E.D. La. Dec. 29, 2015) (Brown, J.). However, this reliance is misplaced. In that case, the Court specifically found that "[g]iven the evidence submitted by Defendants and Plaintiff that all insurance contracts entered into by Shamrock were required to contain a provision that the insurance companies waived the right to subrogation against Energy XXI and its contractors, the Court finds that American Longshore has waived any right to subrogation against Defendants." *Id.* at *4. The Court in Sapp therefore relied on the MSC's requirement that the insurance policies waive subrogation, rather on the insurance policies themselves, as summary judgment evidence.
[17] R. Doc. No. 286-2, at 3.

> a waiver in respect [to] other operations of such individual, firm, organization or corporation in which [Fluid Crane] has no contractual interest.[18]

ALMA argues that this waiver "does not extend to [Aries or the claimants]" because Fluid Crane "has no contractual interest" in those parties.[19] It is undisputed that the "specific contract" at issue here is the MSC between Fieldwood and Fluid Crane, which required Fluid Crane to obtain LHWCA insurance coverage containing a waiver of subrogation in favor of the Fieldwood Group. And, as the Court has previously discussed, the contracts between Fieldwood on the one hand and Fluid Crane, United Fire, and Aries on the other each required that those parties provide defense and indemnification in favor of "the third party contractor group."[20] Fluid Crane was a member of that group, and therefore benefitted from the defense and indemnification provisions in the contracts between Fieldwood and Aries and Fieldwood and United Fire. Therefore, Fluid Crane did have a contractual interest in the agreements between Fieldwood on the one hand and United Fire and Aries on the other.[21]

---

[18] R. Doc. No. 286, at 10.
[19] *Id.*
[20] R. Doc. No. 241, at 3–4.
[21] *Hammer v. PHI Inc.*, on which ALMA and Fluid Crane briefly rely, is not to the contrary. No. 16-1048, 2019 WL 4463471 (W.D. La. Sept. 17, 2019). In that case, the relevant insurance policy stated that, despite the waiver of subrogation, the insurer had "the right to recover [its] payments from anyone liable for an injury covered by this policy." *Id.* at *9. The waiver did extend to members of the "PHI Group" which included "PHI's "subsidiaries, affiliated companies, joint venturers, partners, agents and invitees." *Id.* The Court found that there was no evidence to support inclusion of an entity within the PHI Group when "[t]he only relation between the two companies is that [the entity] allegedly manufactured the helicopter that was owned/operated by PHI." *Id.* In this matter, as discussed above, Fluid Crane, United Fire, and Aries are contractually connected by their agreements with Fieldwood.

7

Additionally, pursuant to an order by the Court, LWCC provided its contract with United Fire, which contains a provision entitled "Waiver of Our Right to Recover from Others Endorsement."[22] That endorsement states:

> We [LWCC] have the right to recover our payments from anyone liable for an injury covered by this policy. We will not enforce our right against the person or organization named in the Schedule. (This agreement applies only to the extent that you [United Fire] perform work under a written contract that requires you to obtain this agreement from us.)[23]

On the same page, under "Schedule," the term "Blanket Waiver" appears.[24] LWCC makes no argument that this waiver did not cover the parties to this action. Accordingly, the Court concludes that both ALMA and LWCC executed waivers of subrogation in their insurance contracts with Fluid Crane and United Fire, respectively, as required by the MSCs.

### b. LOAIA and the *Fontenot* Exception

As stated above, the Court has already concluded that state law applies to the interpretation and enforcement of the MSCs, rendering their indemnification provisions unenforceable. The LOAIA further provides, in relevant part:

> Any provision in any agreement arising out of the operations, services, or activities listed in Subsection C of this Section of the Louisiana Revised Statutes of 1950 which requires waivers of subrogation, additional named insured endorsements, or any other form of insurance protection which would frustrate or circumvent the prohibitions of this Section, shall be null and void and of no force and effect.

---

[22] R. Doc. No. 310-1, at 21.
[23] *Id.*
[24] *Id.*

8

La. R.S. § 9:2780(G). This statute was enacted to address the "inequity [that] is foisted on certain contractors and their employees by the defense or indemnity provisions, either or both, contained in some agreements" to which the LOAIA applies. *Id.* § 9:2780(A). The Louisiana Supreme Court has held that "voiding a waiver of subrogation clause only achieves the purpose of the [LOAIA] when such a clause is sought to be enforced in conjunction with the enforcement of an indemnification clause." *Fontenot v. Chevron U.S.A. Inc.*, 676 So.2d 557, 565 (La. 1996).

As more recently explained in this district, "[t]he [*Fontenot*] court reasoned that, in oil and gas contracts, waivers of subrogation offend public policy because they foist an inequitable risk onto contractors and away from oil companies." *Delozier v. S2 Energy Operating, LLC*, 500 F. Supp. 3d 514, 525 (E.D. La. 2020) (Morgan, J.). "Similarly, indemnification clauses afford oil companies a means to shift liability onto contractors, inoculating the oil companies from bearing the costs of accidents altogether." *Id.* Because "'[t]his shift of liability only occurs when the two clauses are used together,'" a waiver of subrogation clause does not frustrate the purposes of LOAIA if indemnification is not sought. *Id.* (quoting *Fontenot*, 676 So.2d at 565); *accord Hudson v. Forest Oil Corp.*, 372 F.3d 742, 745–46 (5th Cir. 2004) ("The [*Fontenot*] court determined that because an indemnification clause allows the oil company to shift liability and a waiver of subrogation means the oil company would not have to reimburse for any compensation payments, the two clauses used in combination would frustrate the purpose of LOAIA.").

As noted above, the Court has already concluded that the indemnification clauses in the MSCs are unenforceable because of the application of LOAIA and has denied reconsideration as to that issue. Even so, Fluid Crane, ALMA, and LWCC argue that the *Fontenot* exception is inapplicable because "Fieldwood Group (including Aries Marine) is actively seeking defense [and] indemnity from Fluid Crane and United Fire."[25] ALMA and Fluid Crane argue that because "the appeal delays have not lapsed" as to those decisions, a genuine issue of fact remains that prevents the Court from deciding whether *Fontenot* applies. However, this argument ignores the fact that the Court has decided, as a matter of law, that the indemnification provisions are unenforceable. That decision binds the parties unless it is overruled by a higher court. Accordingly, the parties cannot seek to enforce the indemnification clauses, and, applying the logic of *Fontenot*, voiding the waiver of subrogation would not achieve the purpose of the statute.

Fluid Crane and ALMA also maintain that *Fontenot* and *Hudson* "are distinguishable from the instant matter because the workers' compensation insurers in those matters agreed to waive subrogation in exchange for an increased premium paid by the insured, presumably to offset any loss incurred in connection with a loss of workers' compensation payments."[26] It is true that the insurers in *Fontenot* and *Hudson* received increased premiums in connection with the waivers of subrogation. *Fontenot*, 676 So.2d at 565 (noting that the waiver of subrogation was "a contractual

---

[25] R. Doc. No. 286, at 7 (emphasis omitted).
[26] R. Doc. No. 303.

10

obligation which [the insurance company] voluntarily undertook in exchange for an increased premium"); *Hudson*, 372 F.3d at 748 ("Ace expressly waived the ability to subrogate in the policy it issued to Coastal in exchange for a separate premium."). However, neither of these cases conditioned their holdings on the payment of such a premium.

The *Fontenot* court noted that voiding the insurer's waiver of subrogation, "*especially* when it has been compensated in exchange for waiving its subrogation rights, [would do] nothing to correct the inequities foisted upon" the contractor. 676 So.2d at 565 (emphasis added). It did not appear to hold that such compensation was necessary for the logic of *Fontenot* to apply. The *Fontenot* court also specifically noted that the LOAIA was "enacted to protect oilfield contractors," not insurers. *Id.*

Likewise, in *Hudson*, the Fifth Circuit noted that "the most important aspect of *Fontenot* is that 'voiding a waiver of subrogation clause only achieves the purpose of [LOAIA] when such a clause is sought to be enforced in conjunction with the enforcement of an indemnification clause.'" 372 F.3d at 746 (quoting *Fontenot*, 676 So.2d at 565) (alteration in *Hudson*). The *Hudson* court concluded that *Fontenot* applied to the situation before it because "*Fontenot* tackled the validity of waivers of subrogation used on their own: precisely the situation [in *Hudson*] because [the oil company and its insurance company] solely and formally invoked Ace's waiver of subrogation as a defense to Ace's intervention, not an indemnity provision." *Id.* at 747.

Applying these principles to the instant matter, the Court concludes that the LOAIA does not void the waivers of subrogation by ALMA and LWCC. "Where a waiver of subrogation clause does not shift liability from a tortfeasor oil company back to the oilfield service contractor, the purposes of the Act are certainly not frustrated or circumvented." *Fontenot* 676 So.2d at 565. Because the Court has concluded as a matter of law that Aries and Fieldwood cannot enforce the MSCs' indemnification provisions against Fluid Crane and United Fire, there is no risk that either Fluid Crane or United Fire would bear any tort liability of Aries or Fieldwood. Therefore, as in *Fontenot* and *Hudson*, the waivers of subrogation are invoked as a defense to the claims of ALMA and LWCC. The fact that neither ALMA nor LWCC apparently sought further compensation for their waivers of subrogation does not in and of itself alter the applicability of the above-cited cases.

### c. *Marcel* Premiums

LWCC similarly argues that summary judgment should be denied because there is no evidence that any party paid a "*Marcel* premium." "A *Marcel* premium is a payment in which the principal covers the entire cost of its own insurance coverage and secures an endorsement naming it as an insured in its contractor's policy, rendering the coverage enforceable without frustrating [LOAIA]." *Delozier*, 500 F. Supp. 3d 514, at 526. "In *Marcel v. Placid Oil Co.*, the Fifth Circuit recognized [that the] burden [of insurance coverage and liability] is not placed on independent contractors, even if a claim for indemnification is made, when oil companies pay for their own liability coverage or reimburse the independent contractors fully for the

insurance premiums." *Id.* (citing *Marcel v. Placid Oil Co.*, 11 F.3d 563 (5th Cir. 1994)). "When *Marcel* payments are made, the indemnity clauses of a contract are enforceable." *Id.*

No party has produced evidence that any party paid *Marcel* premiums in this matter. However, the Court has already concluded that the exception to the LOAIA delineated in *Fontenot* and *Hudson* applies to the instant matter. The inapplicability of the *Marcel* exception is therefore immaterial. *See id.* at 526 (finding it "an undisputed fact that [the relevant principal] did not pay *Marcel* premiums," but that the insurance company's waiver of subrogation was enforceable).

### d. Whether Fluid Crane and United Fire Claimants Qualify as Invitees

As stated above, the requirement to obtain waivers of subrogation applied "as to Company Group," and "Company Group" was defined as Fieldwood and its "invitees." Fieldwood Group argues that Aries, as well as the Fluid Crane and United Fire claimants, qualify as "invitees" of Fieldwood such that ALMA and LWCC were obligated to waive their rights of subrogation as to those parties.[27]

In opposition, Fluid Crane and ALMA argue that Aries and the claimants are not invitees for the purposes of the MSCs.[28] They point out that the MSCs each provided definitions not only for "Company Group," but also for "Contractor Group," and "Third Party Contractor Group."[29] They argue that Aries, as well as the claimants, fall under the definition of "Third Party Contractor Group," and that

---

[27] R. Doc. No. 281-1, at 6.
[28] R. Doc. No. 286, at 12.
[29] *Id.*

13

considering them to be members of "Company Group" "would render the language of the indemnity and insurance sections of the contract[s] superfluous because all parties and contractors/subcontractors would be deemed a member of the 'Company Group.'"[30] Fieldwood Group responds that "there is no prohibition against an invitee satisfying another definition in a contract."[31]

In *Borman v. Shamrock Energy Solutions, LLC*, another court in this district analyzed a similar MSC and concluded that a party was both a member of the "Third Party Contractor Group" and a member of the "Company Group." 421 F. Supp. 3d 382, 387 (E.D. La. Oct. 7, 2019) (Barbier, J.). The Court found that "[t]here is nothing in the language of the Linear MSC that indicates Shamrock cannot be both a Third-Party Contractor and an invitee" and noted that it had identified "no case where a court has refused to apply the [generally applicable definition of invitee] merely because a potential invitee satisfied another definition in a contract." *Id.* (collecting cases holding similarly). The same is true here.

Moreover, the Fluid Crane MSC specifically provides that "[i]n the event that [Fieldwood] has agreed to release, protect, defend, indemnify, or hold harmless any person or entity for a Claim for which [Fluid Crane] has also agreed to [do the same]," then Fluid Crane's obligation would "supersede and be primary to" that of Fieldwood.[32] Accordingly, the fact that a party might be part of both the "Company

---

[30] *Id.*
[31] R. Doc. No. 294, at 4.
[32] *Id.* at 5; R. Doc. No. 281-3, at 8.

14

Group" and the "Contractor Group" would not lead to circular indemnification or otherwise absurd results.

Because the Court concludes that there is no inherent problem with the possibility that Aries and the claimants might be members of both the "Third Party Contractor Group" and of the "Company Group," the Court turns to whether they were in fact invitees within the meaning of the contract. When a contract uses but does not define the term "invitee," "courts in [the Fifth] [C]ircuit apply the definition articulated in *Blanks v. Murco Drilling Corp.*," which, "drawing on Louisiana law, [ ] defined 'invitee' as 'a person who goes onto premises with the expressed or implied invitation of the occupant, on business of the occupant or for their mutual advantage.'" *Grogan v. W & T Offshore, Inc.*, 812 F.3d 376, 379 (5th Cir. 2016) (quoting *Blanks v. Murco Drilling Corp.*, 766 F.2d 891, 894 (5th Cir. 1985)) (footnote omitted).

Fieldwood Group asserts that Fieldwood qualifies as an occupant of the WD 68-U platform and the RAM XVII, applying the "customary" definition approved by the Fifth Circuit in *Grogan*: "one who has possessory rights in, or control over, certain property or premises." *Id.* at 380. Fieldwood Group was the owner of the platform and the time charterer of the vessel. No party disputes Fieldwood's status as an occupant of the platform or the vessel. *See Brown v. Sea Mar Mgmt., LLC*, 288 F. App'x 922, 925 (5th Cir. 2008) (finding that a time charterer of a vessel was an "occupant" of that vessel because the vessel "was under the ultimate direction, control, and command of" the time charterer).

15

Fieldwood Group further asserts that the claimants—i.e. the employees of Fluid Crane and United Fire—fit the above definition of invitee because "Fieldwood had a direct contract with both Fluid Crane and [United Fire]," "[t]heir respective employees were explicitly invited by Fieldwood first to the WD 68 U . . . and thereafter to the RAM XVIII," and "the work [the claimants] performed on WD 68 U benefitted Fieldwood."[33] An individual does "not need to be part of the relevant corporate structure" in order to qualify as an invitee. *Durr v. GOL, LLC*, 393 F. Supp. 3d 476, 488 (E.D. La. 2019) (Ashe, J.); *Grogan*, 812 F.3d at 381 (finding that where W & T (the inviter) "directly contracted with Tiger [the invitee's employer] for a specific scope of work, funded all of Tiger's work, and . . . explicitly invited Tiger to work on the" project, Tiger's employee was an invitee of W & T). It is undisputed that Fluid Crane and United Fire directly contracted with Fieldwood and were invited by Fieldwood to the platform to perform work that benefitted Fieldwood. Accordingly, the Court finds that the employees of Fluid Crane and United Fire were invitees of Fieldwood. Per the terms of the MSCs, therefore, LWCC and ALMA were required to waive subrogation in favor of the Fluid Crane and United Fire claimants.

Fieldwood Group also asserts that Aries qualifies as an invitee of Fieldwood because "Fieldwood had a direct contractual relationship with Aries" and "at all relevant times the RAM XVIII had lowered its pads to the sea floor near the WD 68 U platform, and thereafter elevated to its working height, within the boundaries of

---

[33] R. Doc. No. 281-1, at 8.

16

the WD 68 mineral lease."[34] It also points out that, once the vessel attained its working height, a metal walkway was welded in between the vessel and the platform.[35] Fieldwood Group argues that, because Fieldwood explicitly invited the RAM XVIII (which was owned by Aries) "to erect itself within the boundaries of Fieldwood's mineral lease to assist in" the work being performed on the platform, Aries qualifies as an invitee for the purposes of the MSC.[36]

Fluid Crane and ALMA argue in opposition that "there is no evidence before the Court that any member of [Aries] ever stepped foot on the Fieldwood platform" and that the argument regarding the vessel's placement fails because there is no evidence to support its placement within the mineral lease and the lease "includes various waters of the Gulf of Mexico [which] is not a 'premise' able to be controlled by Fieldwood."[37] They do not dispute, however, that the vessel was attached to the platform via a walkway, nor that the presence of the vessel benefitted Fieldwood.

A contractor may be an "invitee" within the meaning of a contract. *See Alex v. Wild Well Control, Inc.*, No. 07–9183, 2009 WL 2599782, at *10 (E.D. La. Aug. 18, 2009) (Fallon, J.) ("The scope of [the term] invitee can include companies that are contractors or subcontractors of the parties being indemnified directly."). The Fifth Circuit has "essentially held that a particular area of the Gulf is not a 'premises' controlled by the relevant party" for purposes of determining whether an entity is an

---

[34] *Id.* at 9.
[35] *Id.*
[36] *Id.*
[37] R. Doc. No. 286, at 15.

invitee. *Durr*, 393 F. Supp. 3d at 489 (citing *Knox v. REC Marine Logistics, L.L.C.*, 716 F. App'x 370, 372 (5th Cir. 2018)); *accord Knox v. Bisso Marine, LLC*, NO. 16-13350, 2017 WL 2098876, at *3 (E.D. La. May 15, 2017), *aff'd*, *Knox*, 716 F. App'x 370 ("In order for REC to prevail under [the definition of invitee], the Court would have to conclude that the Gulf of Mexico (or at least some part of it) was a 'premises' that Bisso 'occupied' before it invited REC to join the party.").

However, in the instant matter, Fieldwood Group does not argue that the applicable premises are the Gulf of Mexico. It argues that, because the vessel was physically attached to Fieldwood's platform, Aries "[went] onto [Fieldwood's] premises." Accordingly, in determining that Aries is an invitee of Fieldwood in these circumstances, the Court need not "conclude that the Gulf of Mexico (or at least some part of it) was a 'premises.'" *Knox*, 2017 WL 2098876, at *3. Instead, it need only conclude that Aries, via the RAM XVII, went onto Fieldwood's premises (the platform) with the invitation of Fieldwood (expressed via the agreement between Aries and Fieldwood) on the business of Fieldwood or for their mutual advantage. *Grogan*, 812 F.3d at 379. The Court so concludes. As discussed above, it is undisputed that Fieldwood expressly contracted with Aries for use of the RAM XVIII and that the vessel attached itself to Fieldwood's platform in connection with the work contracted for by Fieldwood. Aries therefore qualifies as an invitee of Fieldwood for these purposes.

## IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the motion for summary judgment is **GRANTED** and the claims of LWCC and ALMA are **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana, May 24, 2023.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**