UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN THE MATTER OF ARIES MARINE CORPORATION, ET AL. | CIVIL ACTION<br><br>NO. 19-10850 c/w NO. 19-13138<br><br>SECTION "O" |

## ORDER AND REASONS

Before the Court in this limitation-of-liability action arising from the listing and capsizing of the liftboat RAM XVIII is Petitioner Aries Marine Corporation's motion[1] for partial summary judgment on two of Claimants' theories of liability.

First, Aries asks the Court to grant partial summary judgment holding that Aries's positioning of the RAM XVIII did not cause the liftboat to capsize.[2] Aries contends that it is entitled to that holding under issue-preclusion principles and the law-of-the-case doctrine because Aries says that Judge Africk[3] decided "this very issue" when he granted Fugro USA's motion for summary judgment and "found no evidence that the positioning of the vessel caused or contributed to" the capsizing.[4]

The Court disagrees. In granting Fugro's motion for summary judgment against Claimants, Judge Africk did not make a broad factual finding that the positioning of the RAM XVIII did not cause the capsizing; he made the distinct, narrower, and more nuanced finding that Claimants failed to point to summary-judgment evidence supporting an inference that Fugro's specific conduct proximately

---

[1] ECF No. 392.
[2] *Id.* at 1.
[3] This case was transferred from Section "I" to Section "O" in December 2023. ECF No. 328.
[4] ECF No. 392 at 1.

caused the liftboat to capsize.[5] Because Judge Africk did not broadly determine that the positioning of the RAM XVIII did not cause the capsizing, as Aries argues, Aries is not entitled to partial summary judgment precluding Claimants from raising the positioning theory under the law-of-the-case doctrine or issue-preclusion principles.

Second, Aries asks for partial summary judgment holding that Claimants may not invoke *res ipsa loquitur* to support their general-maritime-law negligence claims.[6] Aries reasons that *res ipsa loquitur* does not apply because Aries did not have exclusive control over the seabed, which Aries says is the "instrumentality" that caused Claimants' injuries.[7] But Aries has not shown that there is no genuine dispute that the "instrumentality" is the seabed—rather than the RAM XVIII. At the very least, there is a genuine dispute as to whether the RAM XVIII is the "instrumentality" that caused Claimants' injuries. And because Aries had exclusive control over the RAM XVIII, Aries is not entitled to partial summary judgment precluding Claimants from invoking *res ipsa loquitur* based on Aries's exclusive-control argument.

Accordingly, for these reasons and those that follow, Aries's motion for partial summary judgment on two of Claimants' discrete theories of liability is **DENIED**.

I.  BACKGROUND

Most of the facts material to Aries's motion for partial summary judgment are detailed in two of Judge Africk's rulings: (1) his order and reasons[8] granting Fugro's

---

[5] ECF No. 236 at 9–10.
[6] ECF No. 392 at 1–2.
[7] ECF No. 392-1 at 13–16.
[8] ECF No. 239.

2

motion for summary judgment against Claimants; and (2) his order and reasons[9] denying Aries's motion for summary judgment against Claimants. The Court will not re-state all of those facts here. In short, this is a limitation-of-liability action that arises from the listing and capsizing of the liftboat RAM XVIII in the Gulf of Mexico. Aries owned and operated the RAM XVIII;[10] Fieldwood Energy, LLC chartered it.[11] Fugro provided data and imaging of the seabed on which the RAM XVIII sat.[12] Claimants in this limitation action were aboard the RAM XVIII when it capsized.[13]

When the liftboat capsized, it was jacked-up in the West Delta 68-U region on the Outer Continental Shelf in the Gulf of Mexico.[14] A Fugro surveyor provided Aries's captain with information the captain used to choose where to place the liftboat's legs on the seabed.[15] But it was Aries's captain who "ma[d]e the last call" on where to place the liftboat.[16] Aries's captain considered soil conditions in the region to be "[b]ad": The soil there had given him "trouble" because the seabed in the region has "a clay bottom" and so a liftboat's legs "get good penetration sometimes," but "sometimes" get no penetration "at all."[17] Still, Aries's captain felt comfortable with the placement of the RAM XVIII because he understood that three other liftboats had been placed near the same spot.[18] Aries's root-cause analysis ultimately concluded

---

[9] ECF No. 236.
[10] ECF No. 392-5 at 1.
[11] ECF No. 392-7 at 2:6–11.
[12] ECF No. 239 at 1.
[13] ECF No. 236 at 3.
[14] ECF No. 49 at ¶ 11.
[15] ECF No. 392-10 at 21:14–20.
[16] *Id.* at 21:21–25.
[17] *Id.* at 27:3–5, 27:14–20.
[18] *Id.* at 28:1–5.

3

that the liftboat capsized because "undetected unstable soil conditions" under the liftboat's port leg caused the liftboat's leg pad to "punch through" the seabed.[19]

Aries later petitioned for exoneration from or limitation of liability.[20] Claimants filed claims in the limitation action, and they separately sued Fugro and Fieldwood in Civil Action No. 19-13138.[21] The cases were eventually consolidated.[22]

After various preliminaries not strictly relevant here, Aries moved for summary judgment dismissing the claims Claimants asserted against it.[23] But Judge Africk denied summary judgment, finding a genuine dispute "as to whether the RAM XVIII performed a preload before jacking up."[24] In so finding, Judge Africk explained that the preload's purpose is "to ensure that the [liftboat's] leg pads are on stable ground and will not punch through the seabed."[25] Judge Africk observed that "[b]oth parties" had agreed that "Aries'[s] captain was responsible for performing the preloading process."[26] Judge Africk thus reasoned that Aries's captain's failure to perform a proper preload "could constitute negligence . . . and could have been a substantial factor in causing" the punch-through event that led to the capsizing.[27]

Separately, Judge Africk granted Fugro's motion for summary judgment and dismissed with prejudice the general-maritime-law negligence claims that Claimants

---

[19] ECF No. 392-2 at 2:10–25–3:1–2.
[20] ECF No. 1.
[21] *See, e.g.*, ECF Nos. 6, 13, 49.
[22] ECF No. 51.
[23] ECF No. 151.
[24] ECF No. 236 at 9.
[25] *Id.* at 9–10 (internal quotation marks omitted).
[26] *Id.* at 10.
[27] *Id.* (internal quotation marks omitted).

4

asserted against Fugro.[28] In his analysis, Judge Africk assumed that Fugro owed duties to (1) advise Aries's captain about the possibility of additional can holes; and (2) "exercise stop work authority" after one of the liftboat's legs penetrated deeper in the soil than had been expected.[29] But Judge Africk reasoned that Fugro was nonetheless entitled to summary judgment because Claimants failed to point to evidence supporting an inference that Fugro's failure to take any of those actions proximately caused the RAM XVIII to list and capsize.[30] In so holding, Judge Africk explained that Claimants "place[d] the blame for the incident on preloading," which was Aries's responsibility, and that Claimants "failed to articulate a theory of causation supported by the record evidence."[31] Importantly, Judge Africk did *not* broadly find that the positioning of the RAM XVIII did not cause the capsizing; he found only that Claimants failed to point to evidence sufficient to create a genuine dispute as to whether Fugro's conduct proximately caused the liftboat to capsize.[32]

Invoking those summary-judgment rulings, Aries now moves the Court for partial summary judgment on two of Claimants' discrete theories of liability.[33] First, Aries asks the Court to apply the law-of-the-case doctrine and issue-preclusion principles to hold that Aries's positioning of the RAM XVIII did not cause the capsizing.[34] And second, Aries asks the Court to hold that *res ipsa loquitur* does not

---

[28] ECF No. 239.
[29] *Id.* at 7 (internal quotation marks omitted).
[30] *Id.* at 7.
[31] *Id.* at 8.
[32] *Id.* at 7–8.
[33] ECF No. 392.
[34] *Id.* at 1–2.

5

apply to Claimants' negligence claims against Aries.[35] Claimants, Fluid Crane & Construction, Inc., and American Longshore Mutual Association, LTD. all oppose.[36]

## II. LEGAL STANDARD

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A dispute is genuine if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Perry v. VHS San Antonio Partners, L.L.C.*, 990 F.3d 918, 926 (5th Cir. 2021) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A fact is material if it 'might affect the outcome of the suit.'" *Id.* (quoting *Anderson*, 477 U.S. at 248).

The movant has the initial burden to show that there is no genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the nonmovant has the burden of proof at trial, the movant meets its initial burden by "merely point[ing] to an absence of evidence" supporting the nonmovant's claim. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). The movant "need not *negate* the elements of the nonmovant's case." *Id.* (first citing *Celotex*, 477 U.S. at 323; and then citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 885–86 (1990)). Nor must the movant "set forth evidence when the nonmovant bears the burden of persuasion at trial." *Wease v. Ocwen Loan Serv., L.L.C.*, 915 F.3d 987,

---

[35] *Id.* at 2.
[36] ECF No. 404 (Claimants' opposition); ECF No. 417 (opposition of Fluid Crane & Construction, Inc. and American Longshore Mutual Association, Ltd.).

997 (5th Cir. 2019). If the movant "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Little*, 37 F.3d at 1075.

If the movant meets its initial summary-judgment burden, however, the burden shifts to the nonmovant to "identify specific evidence in the summary judgment record demonstrating that there is a dispute of material fact concerning the essential elements of its case for which it will bear the burden of proof at trial." *In re Taxotere (Docetaxel) Prod. Liab. Litig.*, 994 F.3d 704, 708 (5th Cir. 2021) (first citing FED. R. CIV. P. 56(a) & (e); and then citing *Celotex*, 477 U.S. at 324). "Speculative theories cannot defeat a motion for summary judgment." *Guillot ex rel. T.A.G. v. Russell*, 59 F.4th 743, 750 (5th Cir. 2023) (citing *Little*, 37 F.3d at 1075). Nor may a nonmovant "defeat summary judgment with 'conclus[ory] allegations, unsupported assertions, or presentation of only a scintilla of evidence.'" *Flowers v. Wal-Mart Inc.*, 79 F.4th 449, 452 (5th Cir. 2023) (quoting *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012)). "Instead, the nonmovant must go beyond the pleadings and designate specific facts that prove that a genuine [dispute] of material fact exists." *Id.* (citing *Little*, 37 F.3d at 1075). If the nonmovant "fails to meet this burden, the motion for summary judgment *must* be granted." *Little*, 37 F.3d at 1076 (emphasis added).

In reviewing the summary-judgment record, the Court draws all reasonable inferences in favor of the nonmovant. *See Vote.Org v. Callanen*, 89 F.4th 459, 469 (5th Cir. 2023) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). And the Court "resolve[s] factual controversies in favor of the nonmoving

7

party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075.

This case is set for a bench trial.[37] "Ordinarily, '[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences are jury functions, not those of a judge.'" *Fleming v. Bayou Steel BD Holdings II L.L.C.*, 83 F.4th 278, 293 (5th Cir. 2023) (quoting *Anderson*, 477 U.S. at 255) (citing *Guzman v. Allstate Assurance Co.*, 18 F.4th 157 (5th Cir. 2021)). "But in a bench trial, the judge acts as 'trier of fact' in place of the jury." *Id.* (quoting *In re Placid Oil Co.*, 932 F.2d 394, 398 (5th Cir. 1991)). "In view of that, 'the [Court] has somewhat greater discretion to consider what weight it will accord the evidence' when considering summary judgment." *Id.* (quoting *Placid Oil*, 932 F.2d at 397). "Specifically, 'even at the summary judgment stage[,] a judge in a bench trial has the limited discretion to decide that the same evidence, presented to him or her as trier of fact in a plenary trial, could not possibly lead to a different result.'" *Id.* at 293–94 (quoting *Placid Oil*, 932 F.2d at 398). "And 'the [C]ourt may conclude on the basis of the affidavits, depositions, and stipulations before it, that there are no genuine issues of material fact, even though [the Court's] decision may depend on inferences to be drawn from what has been incontrovertibly proved." *Id.* (quoting *Placid Oil*, 932 F.2d at 397).

---

[37] *See* ECF No. 331 at 6.

## III. ANALYSIS

Aries moves the Court to grant partial summary judgment precluding Claimants from raising two discrete theories of liability.[38] The first theory the motion targets is that Aries's positioning of the RAM XVIII caused the liftboat to capsize.[39] The second targeted theory is *res ipsa loquitur*.[40] The Court takes each theory in turn.

### A. Aries's Positioning of the RAM XVIII

First, Aries contends that the Court should grant partial summary judgment holding that Aries's positioning of the RAM XVIII did not cause the capsizing.[41] Aries says that Judge Africk already decided "this very issue" when he granted Fugro's motion for summary judgment and "found no evidence that the positioning of the vessel caused or contributed to" the capsizing.[42] Aries thus argues that (1) issue-preclusion principles and (2) the law-of-the-case doctrine preclude Claimants from arguing that Aries's positioning of the RAM XVIII caused the liftboat to capsize.[43] The Court considers issue preclusion before turning to the law-of-the-case doctrine.

#### 1. *Issue Preclusion*

Aries is not entitled to partial summary judgment on Claimants' positioning theory based on issue-preclusion principles. That is for two independent reasons. First, as a matter of law, issue preclusion does not apply where, as here, one party aims to bar another from relitigating the supposed effects of a ruling rendered in the

---

[38] ECF No. 392 at 1–2.
[39] *Id.*
[40] *Id.*
[41] *Id.* at 1.
[42] *Id.*
[43] *Id.* at 1–2.

9

same case. And second, even if issue preclusion could apply here, it does not apply because its requirements are not met: The question whether the RAM XVIII's positioning caused the capsizing has not been "actually litigated" and determined.

Issue preclusion—"sometimes called collateral estoppel"—is a form of *res judicata*[44] that "precludes a party from relitigating an issue actually decided in a prior case and necessary to the judgment." *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 590 U.S. 405, 411 (2020) (citations omitted). It "addresses the effect in a current case of a prior adjudication in *another case*." *Currier v. Virginia*, 585 U.S. 493, 507 (2018). "So it doesn't often have much to say about the preclusive effects of rulings within the framework of a continuing action." *Id.* (internal quotation marks and citation omitted); *accord Hull v. Freeman*, 991 F.2d 86, 90 (3d Cir. 1993) ("Relitigation of issues previously determined in the same litigation is controlled by principles of the law of the case doctrine rather than collateral estoppel."); 18A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 4434 (3d ed.) ("Some opinions seem to confuse preclusion with law-of-the-case principles . . . . Preclusion should not apply within the framework of a continuing action." (citations omitted)).

Issue preclusion does not apply here. Aries invokes it to bar Claimants from relitigating the supposed effects of Judge Africk's order and reasons granting Fugro's motion for summary judgment in *this case*.[45] But issue preclusion only "addresses the effect in a current case of a prior adjudication in *another case*"; it does not apply

---

[44] Although "[t]he terms *res judicata* and claim preclusion often are used interchangeably," "*res judicata* comprises two distinct doctrines"—issue preclusion and claim preclusion. *Brownback v. King*, 592 U.S. 209, 215 n.3 (2021) (internal quotation marks and citation omitted).

[45] ECF No. 392-1 at 10–13.

10

"within the framework of [this] continuing action." *Currier*, 585 U.S. at 507 (internal quotation marks and citation omitted). Aries's issue-preclusion argument thus fails.

Even if issue preclusion could apply in theory, it does not apply in fact because its requirements are not met. Federal issue-preclusion law governs because the Court's jurisdiction is based on 28 U.S.C. § 1333,[46] and Aries bases its issue-preclusion argument on a federal-court order.[47] *See generally Reimer v. Smith*, 663 F.2d 1316, 1326 n.10 (5th Cir. 1981). Under federal law, "issue preclusion applies only when the following elements are met: (1) the issue at stake must be identical to the one involved in the prior action; (2) the issue must have been actually litigated in the prior action; and (3) the determination of the issue in the prior action must have been a part of the judgment in that earlier action." *Lartigue v. Northside Indep. Sch. Dist.*, 100 F.4th 510, 519 (5th Cir. 2024) (internal quotation marks and citation omitted). Those requirements are not met here because the "identical issue"—*i.e.*, whether Aries's positioning of the RAM XVIII caused the liftboat to capsize—has not been "actually litigated" and "determin[ed]." *Id.* (internal quotation marks and citation omitted). *Contra* Aries's contentions, Judge Africk did not decide "this very issue" when he granted Fugro's motion for summary judgment;[48] Judge Africk instead found that Claimants failed to point to summary-judgment evidence sufficient to create a genuine dispute as to whether *Fugro's conduct* proximately caused the liftboat to capsize.[49] Aries's issue-preclusion argument thus fails for this independent reason.

---

[46] ECF No. 1 at 5 ¶ 19.
[47] ECF No. 392-1 at 10–13.
[48] *Id.* at 1.
[49] ECF No. 239 at 7–8.

11

### 2. Law-of-the-Case Doctrine

Aries is not entitled to partial summary judgment on Claimants' positioning theory based on the law-of-the-case doctrine either. That is because the law-of-the-case doctrine applies only to decisions actually made, and as noted, the question whether the RAM XVIII's positioning caused the capsizing has not been decided.

"Generally, under the law of the case doctrine, courts show deference to decisions already made in the case they are presiding over." *Stoffels ex rel. SBC Tel. Concession Plan v. SBC Commc'ns, Inc.*, 677 F.3d 720, 727 (5th Cir. 2012). The law-of-the-case doctrine "is a rule of convenience designed to prevent unnecessary reconsideration of previously decided issues." *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 171 (5th Cir. 2010) (citation omitted). It "is an exercise of judicial discretion [that] merely expresses the practice of courts generally to refuse to reopen what has been decided"; it is "not a limit on judicial power." *United States v. Lee*, 358 F.3d 315, 320 (5th Cir. 2004) (internal quotation marks and citations omitted).

Here, the law-of-the-case doctrine does not preclude Claimants from arguing at trial that Aries's positioning of the RAM XVIII caused the liftboat to capsize. Judge Africk did not "already make" the decision that Aries's positioning of the RAM XVIII did not cause the liftboat to capsize. *Stoffels*, 677 F.3d at 727. On the contrary, Judge Africk made the distinct, narrower, and more nuanced decision that Claimants failed to point to evidence supporting an inference that Fugro's specific conduct proximately caused the liftboat to capsize.[50] Aries's law-of-the-case argument thus fails.

---

[50] ECF No. 236 at 9–10.

### B.     *Res Ipsa Loquitur*

Aries next contends that the Court should grant partial summary judgment holding that Claimants may not invoke *res ipsa loquitur* to support their general-maritime-law negligence claims.[51] Aries reasons that *res ipsa loquitur* does not apply, as a matter of law, because Aries lacked exclusive control over the seabed, which Aries describes as the "instrumentality" that caused Claimants' injuries.[52]

As Judge Africk has explained, both Aries and Claimants have assumed that principles of maritime negligence law govern the claims against Aries under 33 U.S.C. § 905(b).[53] *Res ipsa loquitur* in turn "allows the finder of fact to infer negligence from the unexplained happening of an event which, in the ordinary course of things, would not occur in the absence of negligence." THOMAS J. SCHOENBAUM, 1 ADMIRALTY & MARITIME LAW § 4:4 (6th ed.). Under general maritime law, *res ipsa loquitur* applies if (1) the injured party was without fault; (2) the instrumentality causing the injury was under the exclusive control of the defendant; and (3) the mishap is of a type that ordinarily does not occur in the absence of negligence. *See United States v. Nassau Marine Corp.*, 778 F.2d 1111, 1115–16 (5th Cir. 1985) (citing *Johnson v. United States*, 333 U.S. 46 (1948)). *Res ipsa loquitur* "creates a rebuttable presumption of fault on the part of the person controlling the instrumentality." *Combo Mar., Inc. v. U.S. United Bulk Terminal, LLC*, 615 F.3d 599, 604–05 (5th Cir. 2010) (citing THOMAS J. SCHOENBAUM, 1 ADMIRALTY & MARITIME LAW § 14-3 (4th ed.)). But the trier of fact

---

[51] ECF No. 392 at 1–2.
[52] ECF No. 392-1 at 13–16.
[53] ECF No. 236 at 8–9; *see also* ECF No. 151-1 at 18; ECF No. 204 at 7.

13

is free to "accept or reject the inference of negligence permitted by the doctrine of *res ipsa loquitur* . . . ." *Kennedy v. Henderscheid*, 490 F.2d 85 (5th Cir. 1973) (per curiam).

Aries challenges only the second element of *res ipsa loquitur*. Applied here, that element is met if the "instrumentality" causing Claimants' injuries is "under the exclusive control" of Aries. *See Nassau Marine Corp.*, 778 F.2d at 1115–16. Some of the parties dispute what constitutes "the instrumentality" here—the seabed or the RAM XVIII itself.[54] But the parties do not cite authority elaborating on what, exactly, "instrumentality" means in this context. One "useful and authoritative"[55] dictionary defines "instrumentality" as "a means; an agency." *Instrumentality*, AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 910 (5th ed.). Another defines the term as "[a] thing which serves as a means to an end." *Instrumentality*, OXFORD DICTIONARY OF ENGLISH 907 (3d ed.). These definitions align with the Supreme Court's early formulations of *res ipsa loquitur*, which substitute the phrase "thing which causes injury" in place of the term "instrumentality." *See, e.g.*, *San Juan Light & Transit Co. v. Requena*, 224 U.S. 89, 98 (1912). So, for purposes of this analysis, the Court interprets "instrumentality" to mean the thing causing Claimants' injuries.

Applying that interpretation, and viewing the facts and drawing all reasonable inferences in Claimants' favor, *see Reeves*, 530 U.S. at 150, the Court holds that there is, at the very least, a genuine dispute as to whether the "instrumentality" is the RAM

---

[54] *Compare* ECF No. 392-1 at 13–14 (Aries asserting that the seabed is the relevant "instrumentality") *with* ECF No. 417 at 2 (Fluid Crane & Construction and American Longshore Mutual Association asserting that the RAM XVIII is the relevant "instrumentality").

[55] *See* Antonin Scalia & Bryan A. Garner, *A Note on the Use of Dictionaries*, 16 GREEN BAG 2d 419, 423, 427–28 (2013) (describing the American Heritage Dictionary of the English Language as among "the most useful and authoritative for the English language" for the period of 2001 to present).

14

XVIII itself.[56] No party disputes that Claimants' alleged injuries are traceable to the listing and capsizing of the RAM XVIII. Claimants' engineering expert in turn opines that the RAM XVIII listed and capsized because Aries's captain failed to "conduct a controlled preload process" for the RAM XVIII.[57] And importantly, Judge Africk has already found a genuine dispute as to whether Aries's captain in fact performed a proper preload.[58] As Judge Africk has explained, the purpose of a preload is "to ensure that the leg pads are on stable ground and will not punch through the seabed."[59] Both Aries and Claimants, for their part, have agreed that Aries's captain "was responsible" for the preload.[60] A reasonable fact finder reviewing all of this evidence could find that the RAM XVIII—through Aries's captain's failure to properly preload it—is the "thing" causing Claimants' injuries. The Court therefore holds that there is a genuine dispute as to whether the RAM XVIII is the relevant "instrumentality."[61]

Accordingly, because there is a genuine dispute as to whether the RAM XVIII is the relevant "instrumentality" for purposes of the *res ipsa loquitur* analysis, and because it is undisputed that Aries exercised exclusive control over the RAM XVIII

---

[56] Some of the parties' arguments appear to assume that there may be only one "instrumentality" for purposes of the *res ipsa loquitur* analysis. That assumption is incorrect: "[T]here may be several instruments that could be deemed the cause of the plaintiff's injury" for purposes of *res ipsa loquitur*. *See* RESTATEMENT (THIRD) OF TORTS: PHYS. & EMOT. HARM § 17 (2010).

[57] ECF No. 404-3 at 12 ¶¶ 11–12. Claimants' engineering expert also opines that "it is impossible" that the RAM XVIII would have listed and capsized if Aries's captain had "completed" the preloading process "properly." *Id.* at 8 ¶ 1.

[58] ECF No. 236 at 9–10.

[59] ECF No. 236 at 9–10 (internal quotation marks omitted).

[60] *Id.* at 10.

[61] Aries cites an unpublished, out-of-circuit report and recommendation for the proposition that "[w]hether a case is fit for application" of *res ipsa loquitur* is a question of law. ECF No. 392-1 at 14 n.86. But the actual existence of the circumstances needed to support *res ipsa loquitur* raises a question of fact, and the question of what is the relevant "instrumentality" is essentially a question of causation, which is also a question of fact. *See Manuel v. Cameron Offshore Boats, Inc.*, 103 F.3d 31, 33 (5th Cir. 1997) (citing *Bertram v. Freeport McMoran, Inc.*, 35 F.3d 1008 (5th Cir. 1994)).

during the relevant period, Aries has not carried its burden to show that it is entitled to partial summary judgment on Claimants' *res ipsa loquitur* theory.[62]

Aries's authorities do not change the Court's analysis or conclusion.[63] Aries's first case—*Irwin*—is not instructive here. *Irwin* affirmed the dismissal of a negligence suit brought by a man hurt in an "accident" that happened while he was being carried away from a ship in a lifeboat. 236 F.2d at 775–76. For the first time on appeal, the man's administratrix raised *res ipsa loquitur* to support an argument that the lifeboat accident was caused by the negligence of the ship's crew. *Id.* at 775. But the Second Circuit rejected *res ipsa loquitur*. *Id.* at 775–76. In so doing, that court reasoned that *res ipsa loquitur* did not apply because the trial court made the "finding of fact that the accident was caused by an unpredictable 'freak swell' of the sea and that it was not the result of any fault on the part of the ship." *Id.* at 776. This case differs from *Irwin* for an obvious reason: There has been no factual finding that the RAM XVIII listed and capsized because of any "agency" beyond Aries's control. On the contrary, Judge Africk has already found a genuine dispute as to whether Aries's captain failed to perform a proper preload, and Judge Africk has already explained that the failure to perform a proper preload "could have been a 'substantial factor' in causing [the] punch through event" that led the RAM XVIII to list and capsize.[64]

---

[62] Because the Court concludes that there is a genuine dispute as to whether the RAM XVIII itself is the "instrumentality," the Court does not reach Claimants' alternative argument that Aries exercised exclusive control over the seabed through the preloading process. *See* ECF No. 404 at 14.

[63] ECF No. 392-1 at 15–16 (first citing *Irwin v. United States*, 236 F.2d 774, 775–76 (2d Cir. 1956); and then citing *Talton v. U.S. Lines Co.*, 203 F. Supp. 17, 18, 19 (S.D.N.Y 1962)).

[64] ECF No. 236 at 9–10.

Aries's second case—*Talton*—is equally off-point. *Talton* arose from injuries a passenger suffered when a lurch of a ship caused a door to slam shut on his thumb. 203 F. Supp. at 18. The passenger sued the ship owner for negligence and invoked *res ipsa loquitur*. *Id.* The court rejected *res ipsa loquitur* because the ship owner did not have exclusive control of the door. *Id.* at 19. Aries likens the door in *Talton* to the soil conditions beneath the RAM XVIII: Aries says both are outside the respective defendant's exclusive control. But Aries's exclusive-control argument under *Talton* overlooks that the RAM XVIII itself—rather than the soil conditions beneath it—may be the relevant "instrumentality," and the Court has already found a genuine dispute on that precise question. So, *Talton* does not require a different result here.

### IV.   CONCLUSION

Accordingly,

**IT IS ORDERED** that Aries's motion[65] for partial summary judgment on two of Claimants' discrete theories of liability is **DENIED**.

New Orleans, Louisiana, this 13th day of November, 2024.

BRANDON S. LONG<br>
UNITED STATES DISTRICT JUDGE

---

[65] ECF No. 392.