## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**IN THE MATTER OF ARIES
MARINE CORPORATION, ET AL.**

**CIVIL ACTION**

**NO. 19-10850 c/w NO. 19-13138**

**SECTION "O"**

## ORDER AND REASONS

Before the Court in this limitation-of-liability action arising from the listing and capsizing of the liftboat RAM XVIII are competing motions[1] for summary judgment filed by Fieldwood Energy LLC, on the one hand, and Aries Marine Corporation and U.S. Specialty Insurance Company, on the other. The motions present the principal question whether Fieldwood (charterer of the liftboat) must defend and indemnify Aries (owner of the liftboat) and U.S. Specialty (Aries's insurer) under a master time charter agreement from the personal-injury claims brought by employees of Fluid Crane & Construction, Inc. and United Fire and Safety, LLC (Fieldwood's subcontractors) who were aboard the RAM XVIII when it capsized.

Fieldwood says the answer is "no." To that end, Fieldwood moves for partial summary judgment enforcing waivers of subrogation in the master time charter agreement and the relevant U.S. Specialty insurance policy. Fieldwood reasons that Aries and U.S. Specialty are not owed defense and indemnity because they waived their rights of subrogation in favor of Fieldwood. Fieldwood accordingly asks the Court to dismiss with prejudice all of Aries's and U.S. Specialty's claims against it.

---

[1] ECF No. 415; ECF No. 419.

But Aries and U.S. Specialty see things differently. They submit that Fieldwood owes them defense and indemnity, and so they move for partial summary judgment enforcing indemnity obligations in the master time charter agreement against Fieldwood. They make no argument disputing that their indemnity claims fail as a matter of law if the subrogation waivers in Fieldwood's favor hold. They instead rejoin that the subrogation waivers are unenforceable for assorted reasons.

On this record and briefing, the Court finds that Fieldwood has the better argument. The waivers of subrogation in Fieldwood's favor are enforceable, and Aries and U.S. Specialty have not adequately presented any argument that would allow the Court to hold that their claims for defense and indemnity can survive despite the enforceability of those waivers of subrogation. Accordingly, for these reasons and those that follow, Fieldwood's motion[2] for partial summary judgment is **GRANTED**, and Aries and U.S. Specialty's motion[3] for partial summary judgment is **DENIED**.

## I.    BACKGROUND

The background of this five-year-old case has been recounted in detail in prior summary-judgment rulings.[4] The Court recounts here only those facts strictly necessary to resolve the pending motions raising questions of contractual indemnity.

This limitation-of-liability action arises from the listing and capsizing of the liftboat RAM XVIII in the Gulf of Mexico.[5] Aries chartered the RAM XVIII to

---

[2] ECF No. 415.
[3] ECF No. 419.
[4] *See, e.g.*, ECF Nos. 239, 241, 243, 257, 312, 461.
[5] *See generally* ECF No. 1.

Fieldwood under a master time charter agreement (the "Time Charter")[6] in relation to work being performed on one of Fieldwood's offshore platforms.[7] Fieldwood in turn entered into "separate but substantially identical"[8] master services contracts (the "Master Services Contracts") with Fluid Crane and United Fire.[9] Under those Master Services Contracts, Fluid Crane and United Fire sent employees to work on Fieldwood's platform;[10] those employees were aboard the RAM XVIII when it capsized.[11] U.S. Specialty, for its part, underwrote an insurance policy (the "Policy") that provided Aries with certain coverages in effect when the RAM XVIII capsized.[12]

After the RAM XVIII capsized, Aries petitioned the Court for limitation of or exoneration from liability.[13] Six employees of Fluid Crane and one employee of United Fire—all of whom were aboard the RAM XVIII when it capsized—brought personal-injury claims against Aries in this limitation action.[14] The motions before the Court present the principal question whether Fieldwood must defend and indemnify Aries and U.S. Specialty from those personal-injury claims. But answering that question requires a review of the Time Charter, the Policy, and the Master Services Contracts.

---

[6] *See generally* ECF No. 415-3.

[7] *Id.* at 21–22.

[8] *In re Aries Marine Corp.*, 674 F. Supp. 3d 337, 341 (E.D. La. 2023), *on reconsideration in part*, No. 19-CV-10850, 2023 WL 4890013 (E.D. La. Aug. 1, 2023), *aff'd*, No. 23-30564, 2024 WL 1461945 (5th Cir. Apr. 4, 2024) (per curiam).

[9] ECF No. 153-3 (Fieldwood–Fluid Crane master services contract); ECF No. 153-4 (Fieldwood–United Fire master services contract).

[10] ECF No. 241 at 6.

[11] ECF No. 419-2 at ¶¶ 19 & 21; ECF No. 431-1 at ¶¶ 19 & 21.

[12] *See generally* ECF No. 415-4 (Cover Note CUL11037.078); *see also* ECF No. 419-2 at ¶ 1; ECF No. 431-1 at ¶ 1.

[13] *See generally* ECF No. 1.

[14] ECF No. 419-2 at ¶ 21; ECF No. 431-1 at ¶ 21.

***The Time Charter.*** Four provisions of the Time Charter bear on the indemnity issue before the Court. The first relevant provision is Section 10, covering Aries's insurance obligations.[15] Section 10 required Aries to, among other things, procure protection-and-indemnity insurance, excess-liability insurance, and other coverages.[16] Section 10 features a waiver-of-subrogation provision mandating that "[u]nderwriters of all policies of insurance required [by Section 10] shall waive their rights of subrogation against the Charterer Group,"[17] which includes Fieldwood.[18] Section 10 further provides that "[a]ll deductibles and self-insured retentions under [Aries's] insurance policies specified above shall be for the account of [Aries]."[19] Finally, Section 10 specifies that "[t]he additional insured, waiver of subrogation and primary insurance requirements as set forth herein shall apply and have full force and effect to any self-insurance, self-insured retentions and deductibles carried by [Aries] as part of the insurance requirements set forth herein."[20]

The second relevant provision is Section 12(f)(i), covering cross-indemnification between Aries and Fieldwood's third-party contractors.[21] Section 12(f)(i) requires Aries to defend and indemnify Fieldwood's third-party contractors—for example, United Fire and Fluid Crane—from certain personal-injury claims "[t]o the extent"

---

[15] ECF No. 415-3 at 6–8 § 10.

[16] *Id.*

[17] *Id.* at 8 NOTE to § 10.

[18] *Id.* at 9 § 12(a)(ii). "Charterer Group" means Fieldwood "and its parent, affiliates and subsidiary companies, co-lessees, co-owners, partners, joint venturers, together with its and all of their respective officers, directors, employees, in-house legal counsel, agents, representatives, insurers and invitees and the respective successors, spouses, relatives, dependents, heirs and estate of any of the foregoing." *Id.*

[19] *Id.* at 8 NOTE to § 10.

[20] *Id.*

[21] *Id.* at 11 § 12(f)(i).

those third-party contractors "execute cross indemnifications and waivers substantially similar to those contained in Section 12(f)" of the Time Charter.[22]

The third relevant provision is Section 12(g), covering the consequences of Fieldwood's failure to "execute" an agreement with its third-party contractors that contains "substantially similar" cross-indemnification and waiver provisions.[23] It provides in relevant part that, if Fieldwood "fails to execute an agreement" with a third-party contractor containing "cross indemnification and waivers substantially similar to those contained in" Section 12(f), then Aries's cross-indemnification obligation under Section 12(f) "shall not apply" to that third-party contractor.[24]

The fourth and final relevant provision is Section 12(d), which confirms the independence of Aries's and Fieldwood's respective indemnity and insurance obligations.[25] In relevant part, Section 12(d) provides that Aries and Fieldwood "agree that their respective indemnity obligations hereunder are independent of any insurance which [Aries and Fieldwood] may be required to carry hereunder."[26]

***The Policy.*** The Policy provides coverage to Aries for protection and indemnity, including coverage for personal-injury liability.[27] The Policy includes a waiver-of-subrogation provision that applies to the protection-and-indemnity coverage; that provision provides that "where required by written contract, it is understood and agreed that: . . . [a]ssent is given for all waivers of rights of recovery

---

[22] *Id.* (capitalization and boldface removed).
[23] *Id.* at 11–12 § 12(g).
[24] *Id.*
[25] *Id.* at 10 § 12(d).
[26] *Id.*
[27] ECF No. 415-4 at 80.

made before or after the inception of this Cover Note, but prior to a loss."[28] A separate section of the Policy—governing hull-insurance coverage—contains a waiver-of-subrogation provision and a provision naming Fieldwood as an additional insured.[29] By way of an incorporating clause, those two provisions are "deemed incorporated" into the portion of the Policy providing protection-and-indemnity insurance.[30]

***The Master Services Contracts.*** Consistent with Section 12(f)(i) of the Time Charter, Fieldwood executed the Master Services Contracts with Fluid Crane and United Fire, respectively.[31] Those Master Services Contracts contained cross-indemnification provisions requiring Fluid Crane and United Fire to defend and indemnify members of the "third party contractor group" so long as those third party contractors "execute[d] [substantially similar] cross indemnification and waivers."[32] The upshot of these indemnification provisions is that Fluid Crane and United Fire agreed to indemnify the other involved entities from claims asserted by their own employees, as well as to be responsible for defense costs for such claims.[33] In a prior

---

[28] *Id.* at 23.

[29] *See id.* at 42 ("[I]t is understood and agreed that the following company(s) shall be considered an additional insured hereunder and underwriters' rights of subrogation shall be considered waived against said company(s) but only during such time as the vessel(s) insured hereunder is/are actually working for said company(s)."); *id.* at 44 (identifying Fieldwood as an additional assured). The RAM XVIII was "actually working" for Fieldwood at the time it capsized. *See In re Aries Marine Corp.*, 674 F. Supp. 3d at 341 (observing that "Aries chartered the liftboat RAM XVIII to Fieldwood in relation to work being performed on Fieldwood's WD 68 U platform in the Gulf of Mexico").

[30] *See* ECF No. 415-4 at 92 ("It is understood and agreed that the named assureds, loss payees, additional assureds, waivers of subrogation, prior notice of cancellations provisions appearing in the Hull Section of this Cover Note shall be deemed incorporated herein but only insofar as those vessels named herein are concerned."). The RAM XVIII is named in the "schedule of vessels" for the hull-insurance coverage portion of the Policy. *Id.* at 35 (capitalization removed).

[31] ECF No. 431-4 (Fieldwood–Fluid Crane Master Services Contract); ECF No. 431-5 (Fieldwood–United Fire Master Services Contract).

[32] ECF No. 431-4 at 8 § 13(f); ECF No. 431-5 at 8 § 13(f).

[33] *See* ECF No. 241 at 4.

summary-judgment ruling, Judge Africk correctly characterized those indemnification provisions as "substantially similar" to the indemnification provisions in the Time Charter.[34] In the same ruling, however, Judge Africk held that the Louisiana Oilfield Anti-Indemnity Act ("LOAIA") barred enforcement of the indemnification provisions in the Master Services Contracts.[35] As a result of that holding, Fluid Crane and United Fire were not required to defend and indemnify Aries and Fieldwood from the personal-injury claims asserted by Claimants here.[36]

Invoking the Time Charter and the Policy, Aries and U.S. Specialty asked Fieldwood to defend and indemnify them from Claimants' personal-injury claims.[37] Fieldwood declined.[38] Aries responded by bringing a crossclaim against Fieldwood for breaching the Time Charter.[39] For its crossclaim, Aries alleges that Fieldwood breached Section 12(f)(i) of the Time Charter by failing to execute "substantially similar" cross-indemnifications, waivers, and insuring obligations with Fluid Crane and United Fire.[40] Aries acknowledges that the Master Services Contracts contained cross-indemnifications; however, Aries theorizes that those cross-indemnification provisions "are the functional equivalent of no indemnity agreement[ ]" because Judge Africk ultimately concluded that LOAIA barred enforcement of them.[41] Aries

---

[34] *Id.* at 3–4. The relevant passage of the summary-judgment ruling describes the Time Charter as an "MSC dated November 1, 2013." *Id.* at 4 (citing ECF No. 158-5 at 11–12). But there is no doubt that Judge Africk was referring to the Time Charter, rather than to some other master services contract, because he cited ECF No. 158-5—the Time Charter—in support of his characterization.

[35] *Id.* at 22.

[36] *See id.*

[37] ECF No. 419-2 at ¶ 26; ECF No. 431-1 at ¶ 26.

[38] ECF No. 419-2 at ¶¶ 27–28; ECF No. 431-1 at ¶¶ 27–28.

[39] ECF No. 365.

[40] *Id.* at ¶ 22.

[41] *Id.* at ¶¶ 20–25.

also seeks declaratory relief finding that Fieldwood must defend and indemnify Aries from Claimants' personal-injury claims; that Fieldwood must provide Aries insurance coverage for those claims; and that Fieldwood's alleged breach of the Time Charter renders unenforceable any cross-indemnifications, waivers, and insurance obligations owed by Aries for the personal-injury claims asserted by Claimants.[42]

Claiming to be Aries's partial subrogee under the Policy, U.S. Specialty filed a complaint-in-intervention against Fieldwood.[43] U.S. Specialty asserts a breach-of-contract claim against Fieldwood that is essentially identical to the breach-of-contract claim that Aries asserts against Fieldwood: According to U.S. Specialty, Fieldwood breached Section 12(f)(i) of the Time Charter by failing to execute "substantially similar" cross-indemnifications and waivers with Fluid Crane and United Fire.[44] Beyond the declaratory relief requested in Aries's crossclaim, U.S. Specialty also asks the Court to declare that it is a partial subrogee of Aries under the Policy, and that Fieldwood must reimburse it for the payments it issued to Aries in connection with Aries's defense of Claimants' personal-injury claims.[45]

Fieldwood answered the crossclaim and intervenor complaint.[46] Pointing to Section 10 of the Time Charter, Fieldwood contended that the crossclaim and

---

[42] *Id.* at ¶ 26.
[43] *See generally* ECF No. 366.
[44] *Id.* at ¶¶ 15–29.
[45] *Id.* at ¶ 27.
[46] ECF No. 363 (answer to Aries's crossclaim); ECF No. 364 (answer to U.S. Specialty's intervenor complaint).

intervenor complaint failed as a matter of law because, among other reasons, Aries and U.S. Specialty waived their rights of subrogation in favor of Fieldwood.[47]

Competing motions for summary judgment followed.[48] For its part, Fieldwood moves the Court to enter partial summary judgment enforcing the waivers of subrogation in the Time Charter and the Policy and dismissing Aries's crossclaim and U.S. Specialty's intervenor complaint.[49] Aries and U.S. Specialty oppose.[50] Aries and U.S. Specialty, for their part, move the Court to enter partial summary judgment enforcing the indemnity obligations in the Time Charter.[51] Fieldwood opposes.[52]

## II.   LEGAL STANDARD

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A dispute is genuine if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Perry v. VHS San Antonio Partners, L.L.C.*, 990 F.3d 918, 926 (5th Cir. 2021) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A fact is material if it 'might affect the outcome of the suit.'" *Id.* (quoting *Anderson*, 477 U.S. at 248).

The movant has the initial burden to show that there is no genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the nonmovant has the burden of proof at trial, the movant meets its initial burden by "merely

---

[47] ECF No. 363 at 8–9; ECF No. 364 at 8.
[48] ECF No. 415; ECF No. 419.
[49] ECF No. 419 at 1–2.
[50] ECF No. 432.
[51] ECF No. 419.
[52] ECF No. 431.

point[ing] to an absence of evidence" supporting the nonmovant's claim. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). The movant "need not *negate* the elements of the nonmovant's case." *Id.* (first citing *Celotex*, 477 U.S. at 323; and then citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 885–86 (1990)). Nor must the movant "set forth evidence when the nonmovant bears the burden of persuasion at trial." *Wease v. Ocwen Loan Serv., L.L.C.*, 915 F.3d 987, 997 (5th Cir. 2019). If the movant "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Little*, 37 F.3d at 1075.

If the movant meets its initial summary-judgment burden, however, the burden shifts to the nonmovant to "identify specific evidence in the summary judgment record demonstrating that there is a dispute of material fact concerning the essential elements of its case for which it will bear the burden of proof at trial." *In re Taxotere (Docetaxel) Prod. Liab. Litig.*, 994 F.3d 704, 708 (5th Cir. 2021) (first citing FED. R. CIV. P. 56(a) & (e); and then citing *Celotex*, 477 U.S. at 324). "Speculative theories cannot defeat a motion for summary judgment." *Guillot ex rel. T.A.G. v. Russell*, 59 F.4th 743, 750 (5th Cir. 2023) (citing *Little*, 37 F.3d at 1075). Nor may a nonmovant "defeat summary judgment with 'conclus[ory] allegations, unsupported assertions, or presentation of only a scintilla of evidence.'" *Flowers v. Wal-Mart Inc.*, 79 F.4th 449, 452 (5th Cir. 2023) (quoting *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012)). "Instead, the nonmovant must go beyond the pleadings and designate specific facts that prove that a genuine [dispute] of material fact exists." *Id.* (citing

*Little*, 37 F.3d at 1075). If the nonmovant "fails to meet this burden, the motion for summary judgment *must* be granted." *Little*, 37 F.3d at 1076 (emphasis added).

In reviewing the summary-judgment record, the Court draws all reasonable inferences in favor of the nonmovant. *See Vote.Org v. Callanen*, 89 F.4th 459, 469 (5th Cir. 2023) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). And the Court "resolve[s] factual controversies in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075.

This case is set for a bench trial.[53] "Ordinarily, '[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences are jury functions, not those of a judge.'" *Fleming v. Bayou Steel BD Holdings II L.L.C.*, 83 F.4th 278, 293 (5th Cir. 2023) (quoting *Anderson*, 477 U.S. at 255) (citing *Guzman v. Allstate Assurance Co.*, 18 F.4th 157 (5th Cir. 2021)). "But in a bench trial, the judge acts as 'trier of fact' in place of the jury." *Id.* (quoting *In re Placid Oil Co.*, 932 F.2d 394, 398 (5th Cir. 1991)). "In view of that, 'the [Court] has somewhat greater discretion to consider what weight it will accord the evidence' when considering summary judgment." *Id.* (quoting *Placid Oil*, 932 F.2d at 397). "Specifically, 'even at the summary judgment stage[,] a judge in a bench trial has the limited discretion to decide that the same evidence, presented to him or her as trier of fact in a plenary trial, could not possibly lead to a different result.'" *Id.* at 293–94 (quoting *Placid Oil*, 932 F.2d at 398). "And 'the [C]ourt may conclude on the basis of the affidavits,

---

[53] *See* ECF No. 331 at 6.

depositions, and stipulations before it, that there are no genuine issues of material fact, even though [the Court's] decision may depend on inferences to be drawn from what has been incontrovertibly proved." *Id.* (quoting *Placid Oil*, 932 F.2d at 397).

## III.  ANALYSIS

The motions before the Court are essentially cross-motions for summary judgment on the question whether Fieldwood must defend and indemnify Aries and U.S. Specialty from Claimants' personal-injury claims under the Time Charter. And it is uncontested on this briefing that the answer to that question in turn depends on whether Aries and U.S. Specialty waived their rights of subrogation in Fieldwood's favor. Because the motions are essentially cross-motions for summary judgment, the Court considers each one independently, beginning with Fieldwood's earlier-filed motion. *See, e.g.*, *Miller v. Reliance Standard Life Ins. Co.*, 999 F.3d 820, 283 (5th Cir. 2021) ("When parties file cross-motions for summary judgment, we review each motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." (internal quotation marks and citation omitted)).

### A.    Fieldwood's Motion

Fieldwood moves the Court to grant partial summary judgment enforcing waivers of subrogation in the Time Charter and Policy and dismissing Aries's crossclaim and U.S. Specialty's complaint-in-intervention.[54] Viewing the facts and drawing all reasonable inferences in Aries's and U.S. Specialty's favor, *see Reeves*, 530 U.S. at 150, the Court holds that Fieldwood is entitled to partial summary

---

[54] ECF No. 415 at 1–2.

judgment because a review of the Time Charter and the Policy confirms that both Aries and U.S. Specialty have waived their rights of subrogation against Fieldwood.

### 1.    Interpretation of the Time Charter

It is undisputed[55] that the Time Charter is a maritime contract, and that federal-maritime law governs its interpretation. *See Bourg v. Chevron USA, Inc.*, 91 F.3d 141, 1996 WL 400351, at *2 (5th Cir. June 21, 1996) (per curiam) ("A charter agreement for a vessel is a maritime contract, to be construed according to maritime law." (citing *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1214 (5th Cir. 1986)).

Under federal-maritime law, "[a] maritime contract 'should be read as a whole and its words given their plain meaning unless the provision is ambiguous.'" *Brown v. Sea Mar Mgmt.*, 288 F. App'x 922, 924 (5th Cir. 2008) (per curiam) (quoting *Weathersby v. Conoco Oil Co.*, 752 F.2d 953, 955 (5th Cir. 1984)). "Disagreement as to the meaning of a contract does not make it ambiguous, nor does uncertainty or lack of clarity in the language chosen by the parties." *Breaux v. Halliburton Energy Servs.*, 562 F.3d 358, 364 (5th Cir. 2009) (internal quotation marks and citation omitted). "Where 'the written instrument is so worded that it can be given a certain definite legal meaning or interpretation, then it is not ambiguous, and this Court will construe the contract as a matter of law.'" *Id.* (quoting *Weir v. Fed. Asset Disposition Ass'n*, 123 F.3d 281, 286 (5th Cir. 1997)). Courts "should not construe an indemnity clause to impose liability for a loss neither expressly within its terms nor of such a character

---

[55] *Compare* ECF No. 419-1 at 3 (Aries and U.S. Specialty asserting that federal maritime law governs the interpretation of maritime contracts, like the Master Time Charter) *with* ECF No. 415-1 at 19 (Fieldwood asserting that the Time Charter "is undisputedly a maritime contract governed by federal maritime law").

that the parties probably intended to exclude the loss"; courts instead "construe the indemnity clause to cover all losses 'which reasonably appear to have been within [the parties'] contemplation.'" *Kemp v. Gulf Oil Corp.*, 745 F.2d 921, 924 (5th Cir. 1984) (quoting *Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 333 (5th Cir. 1981)).

## 2.    Interpretation of the Policy

The Policy is a marine insurance policy.[56] And "a marine insurance policy is a maritime contract within federal admiralty jurisdiction." *Albany Ins. Co. v. Anh Thi Kieu*, 927 F.2d 882, n.2 (5th Cir. 1991) (first citing *Morrison Grain Co. v. Utica Mut. Ins. Co.*, 632 F.2d 424, 428 n.4 (5th Cir. 1980); and then citing *Irwin v. Eagle Star Ins. Co.*, 455 F.2d 827, 829 (5th Cir.), *cert denied*, 409 U.S. 852 (1972)).

The Fifth Circuit has "held that 'the interpretation of a contract of marine insurance is—in the absence of a specific and controlling federal rule—to be determined by reference to appropriate state law.'" *Int'l Marine, L.L.C. v. Integrity Fisheries, Inc.*, 860 F.3d 754, 761 n.7 (5th Cir. 2017) (quoting *Ingersoll–Rand Fin. Corp. v. Emp'rs Ins. of Wausau*, 771 F.2d 910, 912 (5th Cir. 1985)).

Here, it is undisputed[57] that there is no "specific and controlling federal rule" on the enforceability of the waiver of subrogation in the Policy. *Id.* (internal quotation marks and citation omitted).[58] So, the Court applies "appropriate state law" to

---

[56] *See* ECF No. 415-4.

[57] *Compare* ECF No. 415-1 at 11–12 (Fieldwood asserting that Louisiana law governs interpretation of the Policy) *with* ECF No. 432 at 1–6 (Aries and U.S. Specialty not contesting Fieldwood's assertion that Louisiana law governs interpretation of the Policy).

[58] It is similarly undisputed that the Policy does not contain a choice-of-law provision governing the relevant provisions. *Compare* ECF No. 415-1 at 12 (Fieldwood asserting that there is no choice-of-law provision governing "the relevant sections" of the policy) *with* ECF No. 432 at 1–6 (Aries and U.S. Specialty not contesting Fieldwood's assertion on that point).

interpret the Policy. *Id.* (internal quotation marks and citation omitted). To decide the "appropriate state law," *id.* (internal quotation marks and citation omitted), the Court applies federal maritime choice-of-law rules, *see Albany Ins. Co.*, 927 F.2d at 890. Those choice-of-law rules in turn direct the Court to apply "the law of the state with the 'most significant relationship' to the substantive issue in question." *Id.* at 891 (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6 (1980)). It is undisputed here that Louisiana is the state with the "most significant relationship" to the interpretation of the Policy because Louisiana is "the state with the most substantial interest in the application of its state's laws to the interpretation" of the Policy. *Certain Underwriters at Lloyds, London v. Cox Operating*, 83 F.4th 998, 1002 n.2 (5th Cir. 2023) (per curiam) (citing *Naquin v. Elevating Boats, L.L.C.*, 817 F.3d 235, 238 (5th Cir. 2016)). Louisiana has "the most substantial interest" in applying its law to interpret the Policy because it is undisputed that the Policy was formed,[59] issued,[60] and delivered[61] in Louisiana. *Id.* (citing *Naquin*, 817 F.3d at 238).

"Under Louisiana law, 'an insurance policy is a contract between the parties and should be construed using the general rules of contract interpretation set forth in the Louisiana Civil Code.'" *Naquin*, 817 F.3d at 238 (quoting *First Am. Bank v. First Am. Transp. Title Ins. Co.*, 585 F.3d 833, 837 (5th Cir. 2009)); *see generally* LA. CIV. CODE ANN., bk. III, tit. IV, ch. 13; *id.* arts. 2045–2057; *see also, e.g.*, *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206–08 (5th Cir. 2007) (discussing Louisiana-

---

[59] *Id.* at 11; *see also* ECF No. 415-2 at 6 ¶ 32.
[60] ECF No. 415-4 at 11; *see also* ECF No. 415-2 at 6 ¶ 33.
[61] ECF No. 415-6 at 6; *see also* ECF No. 415-2 at ¶ 34.

law principles for interpreting insurance contracts). "The role of the judiciary in interpreting insurance contracts is to ascertain the common intent of the insured and insurer as reflected by the words in the policy." *Peterson v. Schimek*, 98-1712, p. 4 (La. 3/2/99); 729 So. 2d 1024, 1028; *see also* LA. CIV. CODE ANN. art. 2045 (contractual interpretation is "the determination of the common intent of the parties").

Under Louisiana law, "[w]ords and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning." *Cadwallader v. Allstate Ins. Co.*, 2002-1637, p. 3 (La. 6/27/03); 848 So. 2d 577, 580 (citing LA. CIV. CODE ANN.  art. 2047). "Insurance policies should be construed holistically, meaning that 'one policy provision is not to be construed separately at the expense of disregarding other policy provisions.'" *Lloyd's Syndicate 457 v. FloaTEC, L.L.C.*, 921 F.3d 508, 517 (5th Cir. 2019) (quoting *La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 93-0911 (La. 1/14/94); 630 So. 2d 759, 763) (citing LA. CIV. CODE ANN. art. 2050). A court may not use "inventive powers to create an ambiguity where none exists"; nor may a court "mak[e] . . . a new contract when the terms express with sufficient clearness the parties' intent." *Cadwallader*, 848 So. 2d at 580; *see* LA. CIV. CODE ANN. art. 2046 (when words are "clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties intent"). "If after applying the other general rules of construction an ambiguity remains, the ambiguous contractual provision is to be construed against the drafter, or, as originating in the insurance context, in favor of the insured." *La. Ins. Guar. Ass'n*, 630 So. 2d at 764; *see also In re Katrina*

16

*Canal Breaches Litig.*, 495 F.3d at 207 (same). "Under this 'rule of strict construction,' ambiguous clauses are 'construed against the insurer and in favor of coverage' and 'equivocal provisions seeking to narrow an insurer's obligation are strictly construed against the insurer.'" *Lloyd's Syndicate 457*, 921 F.3d at 518 (quoting *Bonin v. Westport Ins. Corp.*, 2005-0886, p. 5 (La. 5/17/06); 930 So. 2d 906, 911)).

### 3.    *U.S. Specialty Waived Its Rights of Subrogation*

Reading the Policy using the Louisiana-law interpretive principles outlined in Section III(A)(2) of this order and reasons, and reading the Time Charter using the federal-law interpretive principles outlined in Section III(A)(1), the Court concludes that U.S. Specialty waived its right of subrogation in Fieldwood's favor.

The Policy unambiguously waives U.S. Specialty's right of subrogation in favor of Fieldwood. As noted in Section I of this order and reasons, the Policy features a waiver-of-subrogation provision that states in relevant part that "where required by written contract, it is understood and agreed that: . . . [a]ssent is given for all waivers of rights of recovery made before or after the inception of this Cover Note, but prior to a loss."[62] The Time Charter qualifies as a "written contract"[63] that "require[s]"[64] U.S. Specialty to waive its rights of subrogation against Fieldwood because the Time Charter features a waiver-of-subrogation provision mandating that "[u]nderwriters of all policies of insurance required [by Section 10 of the Time Charter] shall waive

---

[62] ECF No. 415-4 at 23. Aries and U.S. Specialty do not dispute that waiver-of-subrogation provisions are generally enforceable under Louisiana law. *See Boudreaux v. Scott's Boat Rentals, LLC*, 184 F. Supp. 3d 343, 346–47 (E.D. La. 2016) (Barbier, J.) (enforcing waiver-of-subrogation clause); *Aries Marine Corp.*, 674 F. Supp. 3d at 343–44 (same).

[63] *Id.*

[64] *Id.*

their rights of subrogation against the Charterer Group,"[65] which is defined to include Fieldwood.[66] Moreover, for good measure, Judge Africk has already concluded that similar contract language validly waived rights of subrogation in favor of Fieldwood. *See In re Aries Marine Corp.*, 674 F. Supp. 3d at 341, 343–44. In light of all this, the Court holds that U.S. Specialty unambiguously waived its rights of subrogation against Fieldwood. *Cf. Marathon Oil Co. v. Mid Continent Underwriters*, 786 F.2d 1301, 1304 (5th Cir. 1986) (enforcing waiver-of-subrogation clause in a protection-and-indemnity policy to preclude a vessel owner's insurer from recovering from the vessel's charterer the amounts the insurer paid to settle a personal-injury claim).

Accordingly, because a review of the Time Charter and the Policy confirms that U.S. Specialty unambiguously waived its rights of subrogation against Fieldwood, and because the claims asserted in U.S. Specialty's complaint-in-intervention rest on a subrogation theory, the Court grants Fieldwood's motion for summary judgment and dismisses with prejudice U.S. Specialty's complaint-in-intervention.[67] *Accord, e.g.*, *Jackson v. Apache Corp.*, No. 07-CV-346, 2008 WL 11391134, at *2 (S.D. Tex. Sept. 17, 2008) (observing that the insurer of a vessel owner could not assert an indemnity claim against the vessel charterer to recover the costs of a settlement with

---

[65] ECF No. 415-3 at 8 NOTE to § 10.

[66] *Id.* at 9 § 12(a)(ii). It is undisputed that the Policy qualifies as a "polic[y] of insurance required" by Section 10 of the Time Charter. *Id.*

[67] Because the Court holds that the Policy and the Time Charter unambiguously waive U.S. Specialty's subrogation rights against Fieldwood, the Court does not reach Fieldwood's alternative arguments that Aries breached the Time Charter or that U.S. Specialty cannot assert a subrogation claim against Fieldwood given Fieldwood's status as an additional insured. ECF No. 415-1 at 18–19.

an injured employee of the vessel charterer's subcontractor because the vessel owner's insurer had waived its rights of subrogation against the vessel charterer).[68]

### 4.    *Aries Waived Its Rights of Subrogation*

Reading the Time Charter in accordance with the federal-law interpretive principles outlined in Section III(A)(1) of this order and reasons, the Court concludes that Aries also unambiguously waived its right of subrogation in favor of Fieldwood.

Two provisions of the Time Charter—both found in Section 10—confirm that conclusion. The first pertinent provision of the Time Charter states that "[a]ll deductibles and self-insured retentions under [Aries's] insurance policies specified above shall be for the account of [Aries]."[69] The second pertinent provision specifies that "[t]he additional insured, waiver of subrogation and primary insurance requirements as set forth herein shall apply and have full force and effect to any self-insurance, self-insured retentions and deductibles carried by [Aries] as part of the insurance requirements set forth herein."[70] Read together, these provisions of the Time Charter confirm that Aries waived subrogation in favor of Fieldwood to the extent of Aries's deductible under the Policy's protection-and-indemnity coverage.

Accordingly, because a review of the Time Charter confirms that Aries unambiguously waived its rights of subrogation against Fieldwood to the extent of

---

[68] U.S. Specialty does not dispute in its briefing that, if the waivers of subrogation and other relevant provisions are enforceable, its complaint-in-intervention against Fieldwood fails as a matter of law. *Compare* ECF No. 415 at 1 (Fieldwood asserting that U.S. Specialty "can have no cognizable claim against it, as a matter of law," given the subrogation waivers) *with* ECF No. 432 at 1–6 (Aries and U.S. Specialty arguing that the waivers of subrogation are unenforceable, but not disputing that, if the waivers are enforceable, then their claims against Fieldwood fail as a matter of law).

[69] ECF No. 415-3 at 8 NOTE to § 10.

[70] *Id.*

Aries's deductible under the Policy's protection-and-indemnity coverage, the Court grants Fieldwood's motion for summary judgment and dismisses with prejudice Aries's crossclaim against Fieldwood.[71] *Accord, e.g.*, *A.M.C. Liftboats, Inc. v. Apache Corp.*, No. 06-CV-10543, 2008 WL 217177, at *6 (E.D. La. Jan. 25, 2008) (Engelhardt, J.) (holding that waiver-of-subrogation provision in protection-and-indemnity policy barred a vessel owner's claims against a charterer for defense and indemnity).[72]

### 5. *Aries and U.S. Specialty's Counterargument Does Not Change the Court's Analysis or the Result.*

Aries and U.S. Specialty make one principal counterargument: They contend that Fieldwood may not enforce the waivers of subrogation, or benefit from additional-insured status, because Fieldwood breached the Time Charter.[73] They submit that Fieldwood breached Section 12(f) of the Time Charter "by not providing *valid and enforceable* reciprocal cross-indemnities, waivers of subrogation, and insurance support in favor of Aries."[74] Because Judge Africk held that LOAIA barred enforcement of the indemnity provisions of the Master Services Contracts, Aries and U.S. Specialty reason, Fieldwood breached the Time Charter and failed "to provide

---

[71] Because the Court holds that Aries Marine unambiguously waived its rights of subrogation against Fieldwood to the extent of Aries's deductible under the Policy's protection-and-indemnity coverage, the Court does not reach Fieldwood's alternative arguments. ECF No. 415-1 at 22–23.

[72] In its opposition brief, Aries does not dispute that, if the waivers of subrogation and other relevant provisions are enforceable, its crossclaim against Fieldwood fails as a matter of law. *Compare* ECF No. 415 at 1 (Fieldwood asserting that Aries "can have no cognizable claim against it, as a matter of law," given the subrogation waivers) *with* ECF No. 432 at 1–6 (Aries and U.S. Specialty arguing that the waivers of subrogation are unenforceable, but not disputing that, if the waivers are enforceable, then their claims against Fieldwood fail as a matter of law).

[73] ECF No. 432 at 3–5.

[74] *Id.* at 5 (emphasis added).

required consideration to Aries . . . to protect Aries and [U.S. Specialty] against the personal injury claims of Fluid [Crane's] and United Fire's respective employees."[75]

The Court is not persuaded. Viewing the facts and drawing all reasonable inferences in favor of Aries and U.S. Specialty, *see Reeves*, 530 U.S. at 150, the Court holds that a reasonable finder of fact could not find that Fieldwood breached the Time Charter "by not providing valid and enforceable reciprocal cross-indemnities, waivers of subrogation and insurance support in favor of Aries."[76] That is for a simple reason: The cited sections of the Time Charter do not require Fieldwood to "provid[e] *valid and enforceable* reciprocal cross-indemnities, waivers, of subrogation and insurance support" in Aries's favor.[77] Those sections instead require *Aries* to defend and indemnify Fieldwood's third-party contractors—*i.e.*, United Fire and Fluid Crane— from certain personal-injury claims "[t]o the extent" that those third-party contractors "*execute* cross indemnifications and waivers substantially similar to those contained in Section 12(f)" of the Time Charter.[78] Under the Time Charter, if Fieldwood's contractors fail to "*execute* cross indemnifications and waivers substantially similar to those contained in Section 12(f)" of the Time Charter, then Aries's cross-indemnification obligation "shall not apply" to that specific contractor.[79]

For their part, Aries and U.S. Specialty do not direct the Court to any provision of the Time Charter obligating Fieldwood to "provid[e] *valid and enforceable*

---

[75] *Id.* at 3.
[76] ECF No. 432 at 5.
[77] ECF No. 432 at 3.
[78] ECF No. 415-3 at at 11 § 12(f)(i) (capitalization and boldface removed) (emphasis added).
[79] *Id.* at 11–12 § 12(g) (emphasis added).

reciprocal cross-indemnities" in Aries's favor.[80] On the contrary, under the relevant portions of Sections 12(f) and 12(g), Fieldwood was merely required to (1) "execute an agreement" with Fluid Crane and United Fire that (2) contains "cross indemnification and waivers substantially similar to those contained in" Section 12(f).[81]

Fieldwood did so. It (1) "execute[d]"[82] the Master Services Contracts with Fluid Crane and United Fire, respectively; and (2) those Master Services Contracts contained cross-indemnification and waiver provisions "substantially similar"[83] to those contained in Section 12(f) of the Time Charter—as Judge Africk has found.[84] The Time Charter does not impose any added requirement that those cross-indemnification provisions be "valid and enforceable."[85] Had Fieldwood and Aries wished to condition the waiver-of-subrogation and additional-insured provisions of the Time Charter on "the legal enforceability of" the indemnity provisions in the Master Services Contracts, "they very easily could have done so." *LeBlanc v. Global Marine Drilling Co.*, 193 F.3d 873, 875 (5th Cir. 1999). They simply did not.

Along similar lines, Aries and U.S. Specialty contend that the waiver-of-subrogation provisions in Fieldwood's favor are void for lack of consideration.[86] They reason that Aries received no consideration for the waivers of subrogation Fieldwood seeks to enforce because Judge Africk ultimately concluded that LOAIA barred

---

[80] ECF No. 432 at 5 (emphasis added).
[81] ECF No. 415-3 at 11 § 12(f)(i) & 12 § 12(g).
[82] *Id.*
[83] *Id.*
[84] ECF No. 241 at 3–4.
[85] ECF No. 432 at 5.
[86] *Id.* at 5.

enforcement of the indemnity provisions in the Master Services Contracts.[87] But Fifth Circuit precedent forecloses this failure-of-consideration argument: The statutory invalidity of an indemnity obligation in a maritime contract like the Time Charter does not deprive the contract of consideration where, as here, the record reflects that the contracting parties have "an ongoing business relationship."[88] *Voisin v. O.D.E.C.O. Drilling Co.*, 744 F.2d 1174, 1177–78 n.2 (5th Cir. 1984); *see also, e.g.*, *LeBlanc*, 193 F.3d at 875–76 (rejecting argument that statutory invalidity of indemnity obligation rendered maritime contract void for lack of consideration).

The only case Aries and U.S. Specialty cite to support their failure-of-consideration argument is not instructive.[89] *See Gen. Intermodal Logistics Corp. v. Mainstream Shipyards & Supply, Inc.*, 748 F.2d 1071 (5th Cir. 1984). *General Intermodal Logistics Corp.* held that a release was invalid for lack of consideration based on the "well-established principle of federal law that a promise to perform a preexisting duty is not sufficient consideration and is grounds for setting aside a release." *Id.* at 1075 (citation omitted). No party argues that principle applies here.

\*    \*    \*

To sum up: The Court holds that Aries and U.S. Specialty unambiguously waived their rights of subrogation against Fieldwood. Based on the arguments and briefing presented, on this summary-judgment record, the Court holds that the waivers of subrogation in Fieldwood's favor are enforceable, that Fieldwood did not

---

[87] *Id.*

[88] *See* ECF No. 415-5 at 2:7–10 (Fieldwood's representative agreeing that "after this incident, Fieldwood . . . has continued to contract with Aries Marine for use of its liftboats").

[89] ECF No. 432 at 5.

breach Sections 12(f)(i) or 12(g) of the Time Charter, and that the waivers of subrogation are not void for lack of consideration. Accordingly, because the Court holds that the waivers of subrogation are enforceable, and because Aries and U.S. Specialty have not adequately presented any argument that would allow the Court to hold that their crossclaim and complaint-in-intervention, respectively, can survive despite the enforceability of those waivers of subrogation, the Court grants Fieldwood's motion for partial summary judgment. The Court therefore dismisses with prejudice Aries's crossclaim and U.S. Specialty's complaint-in-intervention.

## B.    Aries and U.S. Specialty's Motion

Aries and U.S. Specialty move the Court to grant partial summary judgment enforcing indemnity obligations against Fieldwood under the Time Charter.[90] They more specifically submit that Sections 12(g) and 12(b)(ii) of the Time Charter require Fieldwood to defend and indemnify them from the personal-injury claims asserted against Aries by employees of United Fire and Fluid Crane.[91] Viewing the facts and drawing all reasonable inferences in Fieldwood's favor, *see Reeves*, 530 U.S. at 150, the Court holds that Aries and U.S. Specialty are not entitled to partial summary judgment based on the arguments they have raised under Sections 12(g) and 12(b)(ii).

### 1.    *Section 12(g) of the Time Charter*

To start, Aries and U.S. Specialty contend that Fieldwood owes defense and indemnity under Section 12(g) of the Time Charter because "Fieldwood failed to

---

[90] ECF No. 419.

[91] *Id.* at 1.

execute substantially similar cross indemnifications and waivers" with Fluid Crane and United Fire.[92] This argument fails for at least two independent reasons.

First, the argument rests on a misreading of the Time Charter. Aries and U.S. Specialty have not directed the Court to any language in Sections 12(f)(i) or 12(g) of the Time Charter that obligates Fieldwood "to defend and indemnify Aries for the claims made by the employees of" Fluid Crane and United Fire.[93] On the contrary, as noted in Section III(A)(5) of this order and reasons, Section 12(f)(i) of the Time Charter requires *Aries* to defend and indemnify Fieldwood's contractors—*i.e.*, United Fire and Fluid Crane—from certain claims "[t]o the extent" that Fieldwood's contractors "execute cross indemnifications and waivers substantially similar to those contained in Section 12(f)" of the Time Charter.[94] Section 12(g) of the Time Charter in turn provides that, if Fieldwood's contractors fail to "execute cross indemnifications and waivers substantially similar to those contained in Section 12(f)" of the Time Charter, then Aries's cross-indemnification obligations under Section 12(f) "shall not apply" to that specific contractor.[95] Accordingly, *contra* Aries's and U.S. Specialty's contentions, Sections 12(f)(i) and 12(g) of the Time Charter would not have triggered any indemnity obligation in their favor on the part of Fieldwood, even if Fieldwood had failed to "execute cross indemnifications and waivers" in the

---

[92] ECF No. 419-1 at 10.

[93] *Id.*

[94] ECF No. 415-3 at at 11 § 12(f)(i) (capitalization and boldface removed).

[95] *Id.* at 11–12 § 12(g).

Master Services Contracts that are "substantially similar to those [cross indemnifications and waivers] contained in Section 12(f)" of the Time Charter.[96]

Second, even if Aries's and U.S. Specialty's reading were correct, and Fieldwood's indemnity obligations in favor of Aries and U.S. Specialty could properly be triggered by a failure to satisfy Section 12(f)(i)'s requirements, Aries and U.S. Specialty still would not be entitled to defense and indemnity. That is because the summary-judgment record confirms that the requirements of Section 12(f)(i) were met. Indeed, as noted in Section III(A)(5) of this order and reasons, Fieldwood satisfied the requirements of Section 12(f)(i) insofar as it (1) "execute[d]"[97] the Master Services Contracts with Fluid Crane and United Fire, respectively; and (2) those Master Services Contracts contained cross-indemnification and waiver provisions "substantially similar"[98] to the cross-indemnification and waiver provisions contained in Section 12(f) of the Time Charter—as Judge Africk has already explained.[99]

For their part, Aries and U.S. Specialty rejoin that the cross-indemnification and waiver provisions in the Master Services Contracts cannot be "substantially similar" to the cross-indemnification and waiver provisions in the Time Charter because Judge Africk ultimately held the indemnity provisions in the Master Services Contracts to be unenforceable under LOAIA.[100] In support, they invoke *Pride Offshore, Inc. v. Weatherford, U.S., L.P.*, a thoughtful but nonprecedential 2006

---

[96] *Id.*
[97] *Id.*
[98] *Id.*
[99] ECF No. 241 at 3–4.
[100] ECF No. 419-1 at 10–11.

district-court order that has not been cited by a federal court.[101] *Pride* reasoned that one indemnification agreement was not substantially similar to another because the latter agreement was "void and unenforceable," and "a void and unenforceable indemnity agreement is the functional equivalent of no indemnity agreement." 2006 WL 1968856, at *3. In its analysis, *Pride* acknowledged binding Fifth Circuit precedent holding that the unenforceability of an indemnity provision in a maritime contract does not necessarily render unenforceable insurance obligations in the same contract. *Id.* (first citing *LeBlanc*, 193 F.3d at 876; and then citing *Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 550 (5th Cir. 2002)). But *Pride* distinguished *LeBlanc* and *Diamond Offshore* on the ground that, unlike the language of the contracts in those cases, the language of the contract construed in *Pride* "reflect[ed] an intent to make the enforceability of additional insured provisions contingent upon the perfection of a substantially similar indemnity agreement." *Id. Pride* explained that the language of the contracts construed in *LeBlanc* and *Diamond Offshore* differed because the contracts in those cases lacked language reflecting an intent to condition insurance obligations on the enforceability of indemnity provisions. *See id.*

*Pride* does not allow Aries and U.S. Specialty to avoid *LeBlanc* and *Diamond Offshore* for the simple reason that the critical distinction present in *Pride* is not present here. The language of the Time Charter is more like the language of the contracts construed in *LeBlanc* and *Diamond Offshore* than the language of the contract construed in *Pride*. Like the contracts construed in *LeBlanc* and *Diamond*

---

[101] No. 05-CV-2424, 2006 WL 1968856 (E.D. La. July 6, 2006) (Fallon, J.).

*Offshore*, the Time Charter does not condition insurance obligations on the enforceability of indemnity provisions. On the contrary, the Time Charter expressly states that the insurance and indemnity requirements operate independently: "The Parties agree that their respective indemnity obligations hereunder are independent of any insurance which such Parties may be required to carry hereunder."[102] Accordingly, for this independent reason, Aries and U.S. Specialty are not entitled to partial summary judgment based on the arguments they raise under Section 12(g).

## 2.    *Section 12(b)(ii) of the Time Charter*

Aries and U.S. Specialty next contend that Fieldwood owes defense and indemnity under Section 12(b)(ii).[103] Their argument follows a straightforward three-step syllogism. Step One: Section 12(b)(ii) requires Fieldwood to indemnify Aries for personal-injury claims of "any member of Charterer Group," which is defined to include Fieldwood's invitees.[104] Step Two: The employees of Fluid Crane and United Fire qualify as "any member of Charterer Group" because Judge Africk has already found that those employees are invitees of Fieldwood.[105] Step Three: Therefore, Fieldwood owes defense and indemnity under Section 12(b)(ii) of the Time Charter.[106]

---

[102] ECF No. 415-3 at 10 § 12(d). Section 10 of the Time Charter also supports the independence of the parties' respective indemnity and insurance-requirement obligations; it provides in relevant part that "[i]t is expressly understood and agreed that the insurance coverage required hereunder represents Owners' minimum insurance requirements and are not to be construed to fund or limit the liability or any indemnity obligation undertaken by Owner in this Agreement." *Id.* at 8 § 10 NOTE.

[103] ECF No. 419-1 at 11–15.

[104] *Id.* at 12; *see also* ECF No. 415-3 at 10 § 12(b)(ii) & 9 § 12(a)(ii).

[105] ECF No. 419-1 at 11; *see also* ECF No. 312 at 16 ("Accordingly, the Court finds that the employees of Fluid Crane and United Fire were invitees of Fieldwood.").

[106] ECF No. 419-1 at 11–15.

Even if the Court were to (1) overlook the enforceable waivers of subrogation that defeat Aries's and U.S. Specialty's claims,[107] and (2) assume *arguendo* the correctness of each of the syllogism's three steps, Aries and U.S. Specialty would still not be entitled to summary judgment under Section 12(b)(ii). That is because Section 12(b)(ii) excludes defense and indemnity for claims "caused, in whole or in part," by "the gross negligence . . . of any member of the Owner Group,"[108] and Aries and U.S. Specialty have not carried their initial summary-judgment burden to point to an absence of evidence supporting an inference that the claims asserted against Aries were "caused, in whole or in part," by Aries's gross negligence.[109] Accordingly, because Aries and U.S. Specialty "fail[ ] to meet this initial [summary-judgment] burden, the motion must be denied, regardless of [Fieldwood's] response." *Little*, 37 F.3d at 1075; *accord, e.g., Arana v. MNM Boats, Inc.*, No. 04-CV-97, 2005 WL 5330, at *2 (E.D. La. Jan. 6, 2005) (Fallon, J.) (denying motion for summary judgment on movant's contractual-indemnity claim because the contract excluded indemnity for "gross negligence" and "willful misconduct," and the movant "provid[ed] virtually no evidence to exclude the possibility that its alleged fault may have risen to the level of gross negligence or willful misconduct" (internal quotation marks omitted)).

The Court's conclusion is confirmed by Judge Africk's denial of Aries's motion for summary judgment seeking to dismiss the punitive-damages claims asserted

---

[107] Neither Aries nor U.S. Specialty has contested that, if the waivers of subrogation and related provisions in favor of Fieldwood are enforceable, all of their claims fail as a matter of law.

[108] ECF No. 415-3 at 10 § 12(b)(ii) (boldface and capitalization omitted).

[109] ECF No. 419-1 at 1–20.

against it.[110] In declining to dismiss those claims, Judge Africk necessarily found a genuine dispute as to whether Aries "engaged in behavior that is more than merely negligent"—*i.e.*, whether Aries acted with "gross negligence, reckless or callous disregard for the rights of others or actual malice or criminal indifference."[111]

*     *     *

To sum up: The Court holds that Aries and U.S. Specialty have not met their burden to show that they are entitled to partial summary judgment enforcing indemnity obligations against Fieldwood under the Time Charter. Aries and U.S. Specialty have not shown that they are entitled to defense and indemnity under Section 12(g) of the Time Charter for the independent reasons that (1) Section 12(g) does not create an indemnity obligation on the part of Fieldwood in favor of Aries and U.S. Specialty; and (2) even if it did, Fieldwood's indemnity obligations would not have been triggered because the requirements of Section 12(f)(i) were in fact met. Nor have Aries and U.S. Specialty carried their burden to show that they are owed defense and indemnity under Section 12(b)(ii) of the Time Charter. Setting aside the enforceable subrogation waivers in Fieldwood's favor, Aries and U.S. Specialty have not shown their entitlement to summary judgment under Section 12(b)(ii) because Section 12(b)(ii) excludes indemnity for claims caused in whole or in part by Aries's gross negligence, and Aries and U.S. Specialty have not met their initial summary-judgment burden by pointing to an absence of evidence supporting an inference that Claimants' claims were caused in whole or in part by Aries's gross negligence.

---

[110] ECF No. 236 at 13.
[111] *Id.* (internal quotation marks and citation omitted).

## IV.  CONCLUSION

Accordingly,

**IT IS ORDERED** that Fieldwood's motion[112] for partial summary judgment to enforce waivers of subrogation against U.S. Specialty and Aries is **GRANTED**. Aries's crossclaim against Fieldwood and U.S. Specialty's complaint-in-intervention against Fieldwood are **DISMISSED** with prejudice.

**IT IS FURTHER ORDERED** that Aries and U.S. Specialty's motion[113] for summary judgment to enforce indemnity and other obligations under the Master Time Charter Agreement against Fieldwood is **DENIED**.

New Orleans, Louisiana, this 20th day of November, 2024.

BRANDON S. LONG
UNITED STATES DISTRICT JUDGE

---

[112] ECF No. 415.
[113] ECF No. 419.