UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN THE MATTER OF ARIES            CIVIL ACTION
MARINE CORPORATION, ET AL.
                                  NO. 19-10850 c/w NO. 19-13138

                                  SECTION "O"

ORDER AND REASONS

Before the Court in this limitation-of-liability action arising from the listing of the liftboat RAM XVIII is the motion[1] of Fluid Crane & Construction, Inc. and American Longshore Mutual Association, Ltd. ("ALMA") to reopen this case to allow Fluid Crane and ALMA to litigate Fluid Crane's purported "independent right of subrogation" against Limitation Petitioner Aries Marine Corporation as well as purportedly live claims under *Federal Marine Terminals, Inc. v. Burnside Shipping Co.*, 394 U.S. 404 (1969), for general-maritime-law negligence against Aries Marine. For the reasons that follow, Fluid Crane and ALMA's motion to reopen is **DENIED**.

I.    BACKGROUND

The background of this six-year-old limitation-of-liability action has been recounted in detail in at least seven opinions.[2] So the Court recounts here only the limited facts needed to decide Fluid Crane and ALMA's motion to reopen.

Aries Marine chartered one of its liftboats, the RAM XVIII, to Fieldwood Energy LLC in relation to work being performed on one of Fieldwood's offshore

---

[1] ECF No. 607.
[2] *See, e.g.*, ECF No. 239; ECF No. 241; ECF No. 243; ECF No. 257; ECF No. 312; ECF No. 461; ECF No. 517. The case was originally allotted to Section "I" in May 2019; it was transferred to Section "O" in late December 2023. *See* ECF No. 328.

platforms.[3] Fieldwood in turn entered into a master services contract (the "MSC")

with Fluid Crane.[4] The MSC features an enforceable waiver-of-subrogation provision

that the Court has interpreted to apply in favor of Aries Marine.[5] As required by that

MSC, Fluid Crane's Longshore and Harbor Worker's Compensation Act ("LHWCA")

insurance carrier, ALMA, executed an enforceable waiver of subrogation; the Court

has interpreted that provision to waive ALMA's rights of subrogation in favor of Aries

Marine.[6] Under the MSC, Fluid Crane sent employees to work on Fieldwood's offshore

platform;[7] some of those employees were aboard the RAM XVIII when it capsized.[8]

After the RAM XVIII capsized, Aries Marine petitioned the Court for limitation

of or exoneration from liability.[9] Among other claimants, six Fluid Crane employees

aboard the RAM XVIII when it capsized brought personal-injury claims against Aries

Marine.[10] ALMA paid LHWCA benefits to those six Fluid Crane claimants.[11]

Seeking reimbursement for those payments, Fluid Crane and ALMA timely

filed a limitation claim against Aries Marine.[12] In relevant part, they alleged that—

> To the extent that Aries Marine, the [RAM XVIII] and/or others are
> found liable for the . . . incident, Fluid Crane and ALMA seek recovery
> against Aries Marine, the [RAM XVIII], and/or others for all damages
> incurred or that may be incurred by Fluid Crane and ALMA as a result
> of the incident . . . , including, but not limited to: reimbursement of
> [LHWCA] benefits provided to Fluid Crane employees, . . .
> reimbursement for medical expenses, equipment, and personal effects

---

[3] ECF No. 517 at 2–3.
[4] ECF No. 312 at 1–2.
[5] *Id.* at 1–2, 17–18.
[6] *Id.* at 13.
[7] *Id.* at 3.
[8] *Id.*
[9] *See generally* ECF No. 1.
[10] ECF No. 419-2 at ¶ 21; ECF No. 431-1 at ¶ 21.
[11] ECF No. 312 at 3.
[12] ECF No. 9 at ¶¶ 1–13.

sustained by Fluid Crane on account of its employees as a result of the listing and/or sinking of the [RAM XVIII] for which Fluid Crane and ALMA may become liable as a result of the injuries or damages by any employee who was aboard the [RAM XVIII] . . . .[13]

Fluid Crane and ALMA did not allege any facts distinguishing any purported right of subrogation held by ALMA from any purported right of subrogation held by Fluid Crane: Fluid Crane and ALMA asserted a single limitation claim based on the same set of alleged underlying facts.[14] Of importance to the motion to reopen, Fluid Crane and ALMA did not allege facts consistent with a *Burnside* cause of action[15] under general maritime law, or with any mode of recovery outside the LHWCA. For example, Fluid Crane and ALMA did not allege any facts establishing that Aries Marine owed either Fluid Crane or ALMA an independent tort duty or that Aries Marine breached any such duty.[16] To be sure, Fluid Crane and ALMA did allege they are entitled to recover "to the extent the facts demonstrate" the "incident and resulting loss and damages were proximately caused or contributed to by the fault, negligence, or error of those . . . for which Aries Marine may be legally responsible."[17] But that reference to negligence is merely "consistent with the requirements of the LHWCA," *Doucet v. R. & R. Boats, Inc.*, 17-CV-421, 2020 WL 6533216, at *2 (M.D. La. Nov. 5, 2020); it does not support a conclusion that Fluid Crane and ALMA

---

[13] *Id.* at ¶ 10.

[14] *Id.* at ¶¶ 1–13.

[15] A *Burnside* claim is an independent tort claim that an employer or carrier that has paid LHWCA benefits to an injured employee may assert against the third party that caused the injury. *See Hartford Acc. & Indem. Co. v. Costa Lines Cargo Servs., Inc.*, 903 F.2d 352, 357 (5th Cir. 1990).

[16] *Id.*

[17] *Id.* at ¶ 9.

adequately pleaded a standalone negligence cause of action against Aries Marine under *Burnside*, independent of the LHWCA.

For its part, Aries Marine answered that claim, raising "the application of any waiver of subrogation under any applicable contract" as an affirmative defense.[18]

After various preliminaries not relevant here, Aries Marine and others moved for summary judgment, asking the Court to (among other things) enforce the MSC's waiver of subrogation and dismiss ALMA's claim.[19] Neither the motion for summary judgment nor the brief supporting it mentioned any independent cause of action—under *Burnside*, in the nature of subrogation, or otherwise—asserted by Fluid Crane against Aries Marine.[20] Still, both Fluid Crane and ALMA opposed the motion.[21] In their joint opposition, Fluid Crane and ALMA described the "remaining claims" as "essentially the negligence and punitive damage claims brought by the Fluid Crane and United Fire Claimants, as well as the workers' compensation subrogation claims brought by ALMA and LWCC."[22] Fluid Crane and ALMA did not mention any *Burnside* independent negligence claim that either had brought against Aries Marine. What is more, Fluid Crane and ALMA's briefing on the motion for summary judgment reflected an understanding that an order granting the motion would dispose of both parties' purported subrogation rights. For example, in a supplemental memorandum opposing the motion, Fluid Crane and ALMA urged the Court to deny

---

[18] ECF No. 17 at 7 (eighteenth defense).
[19] ECF No. 281; *accord* ECF No. 281-1 at 2 (requesting "summary judgment enforcing the . . . waivers of subrogation and dismissing the Claim of Fluid Crane's LHWCA carrier, [ALMA]").
[20] ECF No. 281; ECF No. 281-1.
[21] ECF No. 286.
[22] *Id.* at 3.

4

summary judgment because "there is at least an issue of material fact as to whether the MSC required Fluid Crane (rather than its insurance policies) to waive its right of subrogation . . . ."[23] Elsewhere in the briefing, Fluid Crane and ALMA insisted the movants "fail[ed] to show that there is no genuine issue of material fact with respect to their claim that *Fluid Crane and ALMA* waived their right to subrogation."[24]

The Court ultimately granted the motion for summary judgment, enforced the MSC's waiver of subrogation, and dismissed ALMA's claim.[25] The order and reasons on the motion did not reference any purported independent claim of Fluid Crane.[26]

ALMA appealed.[27] Among other issues, ALMA's appeal raised the question whether Fluid Crane had an independent right of subrogation. In fact, ALMA argued in its opening brief that the Court "erred in failing to recognize that Fluid Crane had an independent right of subrogation which ALMA assumed due to the payment of compensation under the LHWCA on Fluid Crane's behalf."[28] In support of that independent-right-of-subrogation argument, ALMA invoked *Sapp v. Wood Group PSN, Inc.*,[29] and asserted that the MSC "does not, on its face, contain a contractual obligation that Fluid Crane waive its right of subrogation."[30] In response, Aries

---

[23] ECF No. 303 at 3.

[24] ECF No. 286 at 16.

[25] ECF No. 312. On reconsideration, the Court amended its order and reasons on the motion for summary judgment to (among other things) preserve ALMA's right to seek an offset under 33 U.S.C. § 933(f) of any third-party recovery by a Fluid Crane employee against the obligation to pay LHWCA compensation. ECF No. 319 at 8. That right to seek an offset is not at issue here.

[26] ECF No. 312.

[27] ECF No. 321.

[28] Original Brief of Appellant at 16, *In Aries Marine Corp.*, No. 23-30564 (5th Cir. Nov. 1, 2023), ECF No. 34-1.

[29] No. 15-CV-3, 2015 WL 9480466 (E.D. La. Dec. 29, 2015).

[30] Original Brief of Appellant at 16, *In re Aries Marine Corp.*, No. 23-30564 (5th Cir. Nov. 1, 2023), ECF No. 34-1.

Marine and others argued that Fluid Crane "unconditionally and expressly waived its own rights of subrogation," and that, in any event, "the record does not support any inference that Fluid Crane has uninsured exposure under the LHWCA to the Fluid Crane Claimants for which it could potentially recover reimbursement."[31]

The Fifth Circuit affirmed the summary-judgment ruling on subrogation under Fifth Circuit Rule 47.6 without issuing a reasoned opinion. *See In re Aries Marine Corp.*, No. 23-30564, 2024 WL 1461945, at *1 (5th Cir. Apr. 4, 2024) (per curiam).

Back before this Court on remand, neither ALMA nor Fluid Crane timely sought leave to amend their limitation claim to assert (1) a standalone *Burnside* negligence cause of action; or (2) an independent subrogation claim on the part of Fluid Crane, distinct from the subrogation claim that was dismissed on summary judgment.[32] They did, however, timely amend their answer—*i.e.*, the same document in which they asserted their original limitation claim—to add affirmative defenses.[33]

In the lead-up to the latest trial setting, the parties submitted a 294-page proposed pretrial order.[34] Under the Court's standard pretrial notice, section 3 of the proposed pretrial order "shall set forth . . . [a] description of the parties, including the legal relationships of all parties *with reference to the claims, counterclaims, third-party claims, cross claims, etc.* . . . ."[35] Section 3 of the parties' proposed pretrial order,

---

[31] Original Brief of Appellees at 48, *In re Aries Marine Corp.*, No. 23-30564 (5th Cir. Dec. 1, 2023), ECF No. 37.
[32] The deadline to amend pleadings expired on April 12, 2024. ECF No. 331 at 1–2.
[33] ECF No. 348.
[34] ECF No. 467.
[35] ECF No. 331-1 at 3 ¶ IX(3) (emphasis added).

however, did not reference any live claims being asserted by Fluid Crane or ALMA.[36]
In full, the section 3 description for Fluid Crane and ALMA stated only that—

> Fluid Crane . . . is a domestic corporation who employed Calvin Abshire;
> Tomas Arce Perez; Gilberto Gomez Rojas a/k/a Luis Jimenez; Lee Bob
> Rose; Gabriel Vilano; and Ronald Williams on November 18, 2018, when
> Claimants alleged to have sustained personal injuries while aboard the
> Aries Marine L/B RAM XVIII during the course of their employment
> with Fluid Crane while working pursuant to its contract with Fieldwood
> Entergy, LLC. [ALMA] is a group self-insured mutual fund authorized
> by the U.S. Department of Labor to provide [LHWCA] insurance to its
> members. ALMA paid LHWCA benefits to and on behalf of Claimants,
> Calvin Abshire; Tomas Arce Perez; Gilberto Gomez Rojas a/k/a Luis
> Jimenez; Lee Bob Rose; Gabriel Vilano; and Ronald Williams.[37]

In a separate section of the pretrial order containing the "material facts
claimed by the parties," Fluid Crane and ALMA described (1) a purported
"independent negligence action against" Aries Marine and (2) a purported "right of
subrogation" that "Fluid Crane continues to have" against Aries Marine.[38] As for the
purported negligence cause of action, Fluid Crane and ALMA cited *Burnside* and
claimed they "are entitled to maintain an independent negligence action against
Aries Marine as the shipowner under general maritime law for damages sustained
by the [e]mployer and [c]arrier."[39] As for the purported subrogation cause of action,
Fluid Crane and ALMA cited *Sapp* and insisted "Fluid Crane continues to have a
right of subrogation against any responsible tortfeasor, such as Aries Marine, because
the [MSC] did not require Fluid Crane to waive its right of subrogation."[40]

---

[36] ECF No. 467 at 5.
[37] *Id.*
[38] *Id.* at 86.
[39] *Id.*
[40] *Id.*

Aries Marine did not note an objection to Fluid Crane and ALMA's description of those purported causes of action. That is perhaps because those causes of action were described in the section of the 294-page pretrial order containing the "material facts claimed by" Fluid Crane and ALMA—not in a section that would have indicated Aries Marine's agreement with the description, and not in section 3, where the parties were described with reference to the claims being asserted. The Court later adopted the proposed pretrial order, subject to modifications not relevant here.[41]

Before trial began, some of the parties settled.[42] But the settlement did not include Fluid Crane and ALMA's purported *Burnside* claims against Aries Marine or Fluid Crane's purported "independent right of subrogation" against Aries Marine.[43]

Based on the settlement, the Court cancelled the trial and entered a conditional order of dismissal.[44] In that order, the Court directed that "any party that contends that it has a live claim requiring further litigation must file a limited motion to reopen as to that purportedly live claim only."[45]

Fluid Crane and ALMA timely moved to reopen.[46] Aries Marine opposes.[47]

---

[41] ECF No. 521 at 2 ¶ 5.
[42] ECF No. 605 at 1.
[43] *Id.*
[44] ECF No. 606 at 1.
[45] *Id.* at 2.
[46] ECF No. 607.
[47] ECF No. 610.

## II.  ANALYSIS

Fluid Crane and ALMA move the Court to reopen this case to allow them to litigate two sets of purportedly live claims against Aries Marine: (1) *Burnside* general-maritime-law negligence claims; and (2) Fluid Crane's "independent right of subrogation as recognized by *Sapp v. Wood Group PSN, Inc.*"[48] The Court denies the motion to reopen because those claims are not properly before the Court.[49]

Fluid Crane and ALMA failed to timely and properly plead the causes of action they now wish to litigate. They properly pleaded one subrogation cause of action in their timely filed limitation claim; they did not timely and properly plead any other cause of action against Aries Marine—not a *Burnside* negligence cause of action nor an "independent right of subrogation" held by Fluid Crane alone.[50] The Court dismissed the only properly raised subrogation cause of action on summary judgment, and the Fifth Circuit affirmed. No cause of action timely and properly asserted by Fluid Crane and ALMA against Aries Marine survived the Fifth Circuit's opinion.

Fluid Crane and ALMA did not properly plead an "independent right of subrogation" on the part of Fluid Crane in their timely filed limitation claim against Aries Marine. Their timely filed limitation claim against Aries Marine does not distinguish any purported right of subrogation held by ALMA from any purported right of subrogation held by Fluid Crane: Fluid Crane and ALMA asserted a single

---

[48] ECF No. 607; *id.* at 6.

[49] Because the Court holds that Fluid Crane and ALMA's purportedly live claims are not properly before the Court, the Court does not reach Aries Marine's argument that those purportedly live claims fail on the merits based on the MSC's waiver of subrogation. ECF No. 610 at 1–7.

[50] *See generally* ECF No. 9 at ¶¶ 1–13.

subrogation cause of action based on the same set of underlying facts.[51] As noted, that single subrogation cause of action was dismissed on summary judgment,[52] and the Fifth Circuit affirmed. *See In re Aries Marine Corp.*, 2024 WL 1461945, at *1.

Nor did Fluid Crane and ALMA properly plead a *Burnside* negligence cause of action in their timely filed limitation claim. "[A] *Burnside* claim is entirely separate, both in nature and in origin, from an employer/carrier's subrogation right." *Hartford Acc. & Indem. Co.*, 903 F.2d at 357 (citing *Peters v. N. River Ins. Co.*, 764 F.2d 306 (5th Cir. 1985)). It "allows an employer/carrier who has paid LHWCA compensation to assert a direct action in tort (or other applicable theory) against the third party or parties who caused the injury." *Id.* (first citing *Peters*, 764 F.2d at 312–13; and then citing *Burnside*, 394 U.S. at 416–17). To state a *Burnside* claim, a plaintiff must plead facts establishing "that (1) the defendant owed the plaintiff a duty of care; (2) the defendant breached the duty; (3) the plaintiff suffered damages; and (4) the breach of the duty proximately caused the damages." *Doucet*, 2020 WL 6533216, at *1. Fluid Crane and ALMA did not adequately plead those elements: They did not plead that Aries Marine owed either Fluid Crane or ALMA an independent tort duty or that Aries Marine breached any such duty.[53] The limitation claim's one-time reference to negligence is merely "consistent with the requirements of the LHWCA," *id.*, at *2, and does not support a conclusion that Fluid Crane and ALMA adequately pleaded a *Burnside* cause of action against Aries Marine. *Accord, e.g., id.* (holding that *Burnside*

---

[51] *Id.*
[52] ECF No. 312.
[53] *Id.*

10

cause of action was not properly pleaded because the complaint did not allege that the defendant owed a tort duty or "mention[ ] any remedy outside of the LHWCA").[54]

Accordingly, Fluid Crane and ALMA did not adequately plead in their timely limitation claim the causes of action they now wish to litigate. Nor did they timely and properly amend their original limitation claim to assert a *Burnside* negligence cause of action or an "independent right of subrogation" on the part of Fluid Crane. Specifically, the amendment deadline expired in April 2024, and Fluid Crane and ALMA did not timely amend their limitation claim to assert the causes of action they now wish to litigate.[55] To be sure, Fluid Crane and ALMA contend that they raised those causes of action in an October 2024 summary-judgment opposition and a status report submitted later that month.[56] But they cite no authority for the proposition that a limitation claimant may properly amend a limitation claim by way of a summary-judgment opposition or a status report. And in any event, the summary-judgment opposition and status report were submitted in October 2024—nearly six months after the amendment deadline expired; as a result, Fluid Crane and ALMA would have had to show "good cause" to modify the scheduling order to allow the amendment under Federal Rule of Civil Procedure 16(b). *See S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 536 (5th Cir. 2003). They did not do so.

---

[54] Tellingly, the proposed pretrial order submitted in advance of a previous trial setting makes no mention of a *Burnside* cause of action. ECF No. 254. Nor does the portion of the proposed pretrial order addressing the "contested material facts" claimed by Fluid Crane and ALMA make any reference to an "independent right of subrogation" held by Fluid Crane. *Id.* at 79–82.

[55] ECF No. 331 at 1–2.

[56] ECF No. 607 at 8–9.

Fluid Crane and ALMA next contend that they properly raised the *Burnside* and subrogation causes of action they now wish to litigate because they referenced them in the section of the pretrial order that contained the "material facts claimed by" Fluid Crane and ALMA. This argument fails for several independent reasons.

First, those causes of action were not properly incorporated into the final pretrial order. It is true that a final pretrial order "supersede[s] all prior pleadings and control[s] the subsequent course of the action." *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 474 (2007) (quotation and citation omitted). And it is true that properly incorporating a new claim into a final pretrial order can "amend[ ] the previous pleadings to state [the new] claim." *Syrie v. Knoll Int'l*, 748 F.2d 304, 308 (5th Cir. 1984). But these precepts do not help Fluid Crane and ALMA for a simple reason: The Court's pretrial notice required Fluid Crane and ALMA to describe their claims in section 3 of the proposed pretrial order,[57] and Fluid Crane and ALMA failed to do so. Indeed, section 3 of the proposed pretrial order does not reference any live claims being asserted by Fluid Crane or ALMA. Accordingly, because Fluid Crane and ALMA failed to describe the purportedly live claims in section 3 of the proposed pretrial order, those purportedly live claims were not properly incorporated into the final pretrial order. So the final pretrial order does not operate as an automatic amendment of the pleadings to state those new causes of action. *Cf. In re Wheeler Hosp., Inc.*, No. 10-20166, 2013 WL 1335642, at *18 (N.D. Tex. Mar. 29, 2013)

---

[57] *See* ECF No. 331-1 at 3 ¶ IX(3).

(concluding that the inclusion of a new defense in the wrong section of the pretrial order did not operate as an amendment of the pleadings to assert the new defense).

Second, even if the new causes of action were properly incorporated into the final pretrial order, the Court would deny Fluid Crane and ALMA leave to amend their limitation claim to assert those new causes of action at this late stage of this six-year-old case. Raising new, unpleaded causes of action in the pretrial order "deprives one's adversary of fair notice, possibly discovery, and the opportunity for motion practice, and is subject to abuse by those who employ a sporting theory of justice." *Wilson v. Muckala*, 303 F.3d 1207, 1215–16 (10th Cir. 2002). Courts therefore construe the incorporation of new, unpleaded causes of action into a pretrial order as a request for leave to amend the pleadings to state the new causes of action. *See, e.g.*, *Smith v. Aztec Well Servicing Co.*, 462 F.3d 1274, 1285 (10th Cir. 2006) ("[A] plaintiff's attempt to add a new claim to the pretrial order [is] the equivalent of asking leave to amend his complaint[.]" (quotation omitted)); *Coward v. Forestar Realty, Inc.*, No. 4:15-CV-0245, 2019 WL 12536146, at *1 (N.D. Ga. July 25, 2019) ("[I]f the plaintiff attempts to include an entirely new claim in the pretrial order that was not listed in the pleadings, the court will construe this as an attempt to amend the pleadings." (citations omitted)); *Sanders v. City of Montgomery*, 319 F. Supp. 2d 1296, 1300 (M.D. Ala. 2004) ("A plaintiff cannot circumvent the consequences of failure to timely amend the complaint by adding new claims or factual bases for a case through the submission of a proposed pretrial order containing them."). Accordingly, although properly incorporating a new claim into a final pretrial order can "amend[ ] the

previous pleadings to state [the new] claim," *Syrie*, 748 F.2d at 308, the proponent of the amendment still must satisfy the standards for amendment of pleadings.

Fluid Crane and ALMA fail to do so. Because the amendment deadline expired in April 2024,[58] about seven months before the parties filed the proposed pretrial order in November 2024,[59] Fluid Crane and ALMA's request for leave to amend their limitation claim to assert the new causes of action would be governed by Rule 16(b)'s "good cause" standard. *See S&W Enters., L.L.C.*, 315 F.3d at 536. "Only upon [Fluid Crane and ALMA's] demonstration of good cause to modify the scheduling order [would] the more liberal standard of Rule 15(a) apply to the . . . decision to grant or deny leave." *Id.* To assess whether Fluid Crane and ALMA have shown good cause, the Court considers "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Id.* (alterations adopted) (quotation omitted). Fluid Crane and ALMA do not address any of these factors. Of particular importance given the age of this case, and the judicial and party resources devoted to it over six years, Fluid Crane and ALMA do not explain why they failed to timely seek leave to amend their limitation claim to properly assert the new causes of action. That failure is especially inexplicable given that Fluid Crane and ALMA timely sought leave to amend their answer to Aries Marine's limitation complaint, but did not include in that timely amendment any

---

[58] ECF No. 331 at 1–2.
[59] ECF No. 467.

14

allegations supporting the new causes of action they now wish to litigate.[60] In sum, because Fluid Crane and ALMA do not even address any of the Rule 16(b) factors, Fluid Crane and ALMA necessarily fail to show good cause to allow an untimely amendment to assert their new, unpleaded causes of action. Accordingly, even if Fluid Crane and ALMA had properly incorporated the new causes of action into the pretrial order, the Court would not allow the amendment raising those new causes of action because Fluid Crane and ALMA fail to satisfy Rule 16(b)'s good-cause standard.

Even if the more lenient Rule 15(a) standard applied, the Court would still deny Fluid Crane and ALMA leave to amend because they unduly delayed asserting the new causes of action. Rule 15(a) requires the Court to "freely give leave [to amend] when justice so requires." FED. R. CIV. P. 15(a)(2). Leave to amend "is not automatic," but the Court "needs a substantial reason to deny a party's request for leave to amend" under Rule 15(a). *D.L. Markham DDS, MSD, Inc. 401(K) Plan v. Variable Annuity Life Ins. Co.*, 88 F.4th 602, 613 (5th Cir. 2023) (quotation omitted), *cert. denied*, 144 S. Ct. 2525, (2024). "Denial of leave to amend may be appropriate in cases of undue delay." *Id.* (citation omitted). "Although Rule 15(a) does not impose a time limit for permissive amendment, at some point, time delay on the part of a plaintiff can be procedurally fatal." *Id.* (quotation omitted). Here, Fluid Crane and ALMA attempted to assert the new causes of action through a proposed pretrial order filed in November 2024—more than five years and five months after Aries Marine

---

[60] *See* ECF No. 338 (April 12, 2024 motion for leave to file first amended answer); ECF No. 348 (first amended answer of Fluid Crane and ALMA).

filed this limitation action in May 2019;[61] more than five years and four months after Fluid Crane and ALMA filed their original limitation claim in July 2019;[62] more than seven months after the April 2024 amendment deadline expired;[63] and just 19 days before the December 2024 trial.[64] Fluid Crane and ALMA "provide[ ] no excuse for their delay," and the Court finds "that granting leave would be an inefficient use of the [C]ourt's resources" given the age of this case and the opportunities Fluid Crane and ALMA have had to properly assert the claims they belatedly wish to litigate. *Id.*

## III. CONCLUSION

Accordingly,

**IT IS ORDERED** that the limited motion[65] to reopen is **DENIED**.

New Orleans, Louisiana, this 12th day of June, 2025.

BRANDON S. LONG
UNITED STATES DISTRICT JUDGE

---

[61] ECF No. 1.
[62] ECF No. 9.
[63] ECF No. 331 at 1–2.
[64] *Id.* at
[65] ECF No. 607.

16